HOWARD C. FORBES *vs.* ARTHUR E. APPLEYARD.

Suffolk.      March 5, 1902. — May 21, 1902.

Present: HOLMES, C. J., KNOWLTON, MORTON, BARKER, & LORING, JJ.

*Contract*, Rescission.

The defendant, a promoter of electric lines with certain projects on hand, employed the plaintiff, an electrical engineer, at the rate of $2,500 a year to perform professional services in regard to certain of these projects one of which might require six months and another a year, the plaintiff mentioning at the time of his employment, that he already had undertaken to make a certain report which would require him to be away at a certain time for about a week. Later the plaintiff notified the defendant that he should have to go away for a little while to complete the report mentioned, whereupon the defendant wrote to him that if he intended to go " it would be better to take a leave of absence without pay for thirty days," as that would give him sufficient time to make his report without interfering with the defendant's business. The plaintiff informed the defendant that he did not consider the proposition in accordance with their agreement, but did not remember what answer the defendant made to this. The plaintiff went away, made his report and returned at the end of five days. He then had conversations with the defendant in regard to the work and expressed a willingness and desire to go on with it, but the plaintiff testified, that at this time the defendant still considered him on leave of absence. Later the plaintiff sued on an account annexed for services during this period, having been paid in full up to the time of his absence. *Held,* that as no definite time or no definite task was fixed by the contract, the defendant's insisting that the plaintiff's stipulated absence should take the form of a leave of absence without pay, if a breach of the contract, could not be treated by the plaintiff as a repudiation of it, and, even if it could have been so treated, the plaintiff had failed to exercise an election to rescind if he ever had it.

CONTRACT upon an account annexed amounting in all to $2,038.67 for professional services as an expert electrical engineer and for expenses. Writ dated March 1, 1901.

In the Superior Court *Hardy*, J. ordered a verdict for the plaintiff for two items only, amounting to $77.61 ; and the plaintiff alleged exceptions.

The bill of exceptions stated the following evidence in regard

to the contract between the parties and the facts relied upon by the plaintiff as constituting a breach on the part of the defendant: The plaintiff testified, that the defendant was a promoter, investor and contractor in connection with lines for electric lighting and electric street railways, that the plaintiff, being an electrical engineer, the defendant spoke to him of various projects he had on hand, asked him if he was in a position to go to Ohio, and offered him $2,500 a year for this work; that, under reasonable conditions, it would take perhaps six months to build a proposed road, and for a proposed power station possibly a year. The plaintiff, in reply, told him he could arrange to go to Ohio, but there were one or two things to be considered, and that the plaintiff would have to make a report for the Shawinigan Water and Power Company, which he had already contracted to do, and in which matter he had already made a preliminary report; that he stated to the defendant that this would take him away for about a week, the company being located ninety miles north of Montreal; that he further stated to the defendant that he was under obligation to the Boston Gas Light Company to continue to furnish it expert services in the matter of the subway explosion cases when they were reached in court, and that it was impossible to tell how long this would take; also, that for family reasons it would be necessary for him to be in Boston about January 1, 1901. The plaintiff testified, that after these conversations, on or about September 7, 1900, the arrangement was closed, and a few days later he started for Springfield, Ohio, and there and elsewhere performed various services. He further testified, that shortly before November 1 he notified the defendant that he should have to go away for a little while to complete the Shawinigan report, and that in reply he received a letter from the defendant dated October 30, 1900, as follows:

" In regard to your trip to Montreal I may say from what I have seen of the time it takes to make one of these reports, I think if you intend to go it would be better to take a leave of absence without pay for thirty days, as that would give you sufficient time to make your report without interfering with our business. This would be the only way that I should be willing that you should do this work.

" Under these circumstances you can commence your leave of absence with the first day of November, reporting back again the first of December.   Of course, I would much prefer that you did not go, but as long as I said you might I feel that this will be the only satisfactory way for me to arrange it."

The plaintiff testified, that previous to this letter there never had been any talk of his being laid off for thirty days without pay ; that the time actually taken in Canada in connection with this report was but three or four days, that the plaintiff's total absence on that account was not over five days, and that the plaintiff never agreed or assented to be laid off for thirty days without pay on this account; that the plaintiff immediately wrote the defendant from Ohio on November 1 as follows:

" I do not think your Montreal arrangement is best for the work out here, nor is it in accordance with my ideas of our understanding.   I am under obligations to the Shawinigan people, however, as I have already been up there and given them a preliminary report, and promised them one of my complete reports as soon as their plant was in proper condition.   I will come to Boston, therefore, and try and see you on Saturday."

The plaintiff testified, that he came to Boston and saw the defendant on November 3, and told him that he did not consider the defendant's proposition in accordance with the agreement; that he was obliged to go to Montreal and Shawinigan, and that he did not recollect what answer the defendant made ; that he got back to Boston on Friday, November 9, and saw the defendant the next day ; that they had a long conversation on the new signal system, and that the defendant submitted some papers to the plaintiff and wished his ideas upon them ; that the plaintiff took them, looked them over, and the next day wrote the defendant a letter, giving him such an opinion; that in their conversations on November 10, the plaintiff told the defendant that he had finished the work in Montreal, that there was nothing further in that connection for him then to do, and that he was ready to do anything the defendant desired; that he saw the defendant several times up to December 12, and had conversations with him ; that at these conversations the plaintiff told the defendant that the machinery for the new power station ought to be ordered, the designs made and the work started, and that

he, the plaintiff, stood ready to begin work at any time as soon as notified by the defendant; that the plaintiff had a telephone at his house and his office and was accessible at any moment; and that at these conversations the matter of the proposed power station was discussed.

The plaintiff further testified: "About the first of December I saw him again and the question came up of getting out and starting the plans of the power station, and getting out the specifications for machinery in order that there might be no delay when the machinery was needed. At that time Mr. Appleyard said he wanted me to take the whole thing off from his hands as he was too busy with other matters to give it any attention, and I then proceeded to, started to make preparations for drawing plans of the power station." He also testified, that they had some discussion as to where the work should be done; that the plaintiff made preparations by cleaning out an old room formerly used as a testing laboratory at his office, buying drafting tables, drawing materials, catalogues, etc., getting ready to begin drafting; that this was early in December, 1900. Referring to this time the plaintiff was asked: "What was the conversation you had that day with Mr. Appleyard?" and answered: "I told him I was going ahead with the plans of the power station, and wanted to consider the question of machinery that he had on hand, and, in general, had a consultation with him on the subject. I remember he still considered me on leave of absence."

*F. N. Nay,* for the plaintiff.

*F. H. Williams,* for the defendant.

HOLMES, C. J. This is an action upon an account annexed for services as an electrical engineer. The plaintiff's case is that he was employed by the defendant, and that the defendant broke the contract before it was completed. Therefore we assume that the suit is for a *quantum meruit.* See *Canada* v. *Canada,* 6 Cush. 15; *Simmons* v. *Lawrence Duck Co.* 133 Mass. 298, 300. On that footing the bill of particulars charges three items: professional services from September 8 to November 3, 1900, inclusive; like services on November 12, and again from December 5 to December 8, both inclusive. The other items were for expenses. At the trial, as we understand the evidence, it was not denied that the plaintiff had been paid for his services and

expenses up to November 1, and the judge, with the defendant's consent, directed a verdict for the plaintiff for the item of November 12 and for expenses incurred after November 1, and would not allow the plaintiff to go to the jury for anything more. The plaintiff excepted.

The course taken by the judge perhaps implied that the plaintiff might recover on a *quantum meruit* if the defendant had broken the contract, and in this, as a general proposition, there is no doubt that he was right. *Fitzgerald* v. *Allen*, 128 Mass. 232. *Cook* v. *Gray*, 133 Mass. 106, 111. *Simmons* v. *Lawrence Duck Co.* 133 Mass. 298, 300. *Goodman* v. *Pocock*, 15 Q. B. 576. *De Bernardy* v. *Harding*, 8 Exch. 822. *Bull* v. *Schuberth*, 2 Md. 38, 57. 2 Smith Lead. Cas. (10th ed.) 32, 40 *et seq.*, note to *Cutter* v. *Powell*. It will be noticed that the plaintiff did not seek to recover for loss of time or for anything except services actually rendered, so that the case does not present the question whether his rights with regard to such an item would be different in this action from what they would have been in a suit upon the contract. See *Goodman* v. *Pocock*, 15 Q. B. 576, 583, 584; *Johnson* v. *Arnold*, 2 Cush. 46; 2 Smith Lead. Cas. (10th ed.) 46. Therefore the most obvious question is whether there was any evidence of services from November 1 to November 3, or from December 5 to December 8. The defendant, it is.true, denies that he made the contract in such form as to bind himself personally and that he broke it, but it is too plain for argument that there was evidence of personal liability for the jury, and we assume for the purposes of decision that there was some evidence of a breach.

We see no evidence that services were rendered during the times mentioned. On November 1 the plaintiff had notice that the defendant considered him on leave of absence for a month without pay, and at the time seems to have yielded a dissatisfied assent, although the defendant's taking this position now is relied on as the breach. In December the plaintiff says that the defendant still considered him on leave of absence. There is no evidence of work done during the earlier days in question, and nothing upon which a jury fairly could base a finding for December. Moreover, if the plaintiff after the breach relied upon, saw fit to do further work mutually understood to be under the con-

tract, he would be confined for his compensation to a suit upon the contract. *Hyland* v. *Giddings*, 11 Gray, 232.

We suppose, however, that the case is brought here upon a different and far more sweeping contention, although if we are right in our surmise the proposition is not developed very plainly. The plaintiff probably wanted to go to the jury for additional compensation for the time for which he had been paid, on the ground that the whole matter was set at large by the defendant's alleged breach of contract.

The plaintiff has not put himself in the position of rescinding the contract from the beginning. He has not returned or offered to return what he has received, but on the contrary has credited it, and, as he received the money under the contract, he must be taken to have credited it under the contract. How far this course is consistent with a *quantum meruit* for any services we need not consider. It hardly is consistent with the position which we are supposing now to be assumed. *Trecy* v. *Jefts*, 149 Mass. 211, 212.

But there are further difficulties which seem to us too great to be overcome. It may be admitted that in some entire contracts a breach on one side pending performance would warrant a rescission and a return of what had been received as preliminary to a recovery outside the contract for all that had been done. On the other hand, in other cases the entirety of the contract at the outset might not be sufficient warrant for that course. It might be apparent that performance and payment were so far set against each other as equivalent that the past could not be disturbed. See Langdell, Contracts, § 128. With regard to contracts of service broken after part performance, a doubt has been expressed by a very eminent judge whether there ever could be a rescission properly so called, or anything more than an emancipation of the servant from the contract for the future, as the past cannot be undone. Bowen, L. J. in *Boston Deep Sea Fishing & Ice Co.* v. *Ansell*, 39 Ch. D. 339, 365. However this may be, the contract in this case as stated by the plaintiff seems to us too indefinite and too nearly an employment at will to warrant the course which the plaintiff desired to pursue. He was not employed for a definite time or for a definite task. There were expectations expressed that a power station would be built. But

the plans were not made, and if nothing more was said than appears in the evidence, it cannot be questioned that the defendant was at liberty to change his mind if he saw fit. Under such circumstances the defendant's insisting that the plaintiff's stipulated absence on his own affairs should take the form of a leave of absence without pay, even if contrary to the earlier understanding, cannot be held to warrant the plaintiff in ripping up the whole period of his service and treating what was done and paid for as reopened for assessment by a jury. There is nothing to show that the defendant might not have dismissed him altogether. Furthermore the plaintiff is met by the further difficulty that he did not treat the contract as wrongfully ended by the defendant's course. The moment for him to treat the contract as repudiated, if ever, was on November 1, when he knew the defendant's position and answered him. But the plaintiff went on and did further work. His testimony shows that it was done or purported to be done under the contract. If he ever had an election he exercised it then.

*Exceptions overruled.*