FORE RIVER SHIPBUILDING CO. v. SOUTHERN PAC. CO.

(Circuit Court of Appeals, First Circuit. November 19, 1914.)

No. 1046.

1. CONTRACTS ⬨205—CONSTRUCTION—CONTRACT FOR BUILDING STEAMSHIP—WARRANTY.

Plaintiff contracted to build a steamship for defendant, with a warranty that "under such management as shall be agreed upon by the parties to be proper" it should show, with a given displacement, on a round trip between New York and New Orleans, a certain average speed, with not to exceed a stated average coal consumption. After being turned over to defendant, the vessel made a number of trial trips, but failed on any of them to fulfill the warranty. *Held*, that the stipulation for agreed

⬨For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

management did not shift the responsibility for the conduct of the officers and crew in the actual handling of the ship from defendant, whose servants they were, and that in an action to recover a deferred installment of the price plaintiff was entitled to show that she was capable of complying with the warranty under proper management, and failed only because of negligent and improper handling, which damaged her motive power.

[Ed. Note.—For other cases, see Contracts, Cent, Dig. §§ 878, 905; Dec. Dig. ☞205.]

**2. CONTRACTS ☞205—CONSTRUCTION—CONTRACT FOR BUILDING STEAMSHIP.**

A provision in the contract that the last installment of the price should become due and payable when the performance of the ship should have equaled, "in the opinion of" the purchaser, in a satisfactory and substantial manner the requirements of the warranty as to speed and coal consumption, called for actual performance on the part of the ship and to the satisfaction of the purchaser; but the purchaser waived his right to insist on actual performance to his satisfaction, if after delivery of the ship to him its structure was so damaged through his negligence as to render it incapable of complying with the warranty; and under such circumstances the purchaser may be required to pay the installment, on its being established that the ship, when delivered, had the capacity to meet the stipulated requirements as to speed and coal consumption.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 878, 905; Dec. Dig. ☞205.]

**3. CONTRACTS ☞261—BREACH—ELECTION OF REMEDIES.**

On a breach of a contract by one party, the other party has his election to rescind or proceed under the contract, and, having elected to proceed, he is bound thereby.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1174–1180; Dec. Dig. ☞261.]

**4. CONTRACTS ☞232—CONSTRUCTION BY PARTIES—ALTERATIONS MADE BY BUILDER OF STEAMSHIP.**

Where the builder of a steamship under contract voluntarily made alterations after delivery in recognition of its obligation under the original contract, the law will not imply a contract on the part of the purchaser to pay for the same.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 1071–1094; Dec. Dig. ☞232.]

Putnam, Circuit Judge, dissenting.

In Error to the District Court of the United States for the District of Massachusetts; Frederic Dodge, Judge.

Action at law by the Fore River Shipbuilding Company against the Southern Pacific Company. Judgment for defendant, and plaintiff brings error. Reversed.

See, also, Southern Pac. Co. v. Fore River Shipbuilding Co., 219 Fed. 378, 135 C. C. A. 120.

Sherman L. Whipple and Samuel H. Pillsbury, both of Boston, Mass. (Guy W. Currier and Philip G. Carleton, both of Boston, Mass., on the brief), for plaintiff in error.

Robert M. Morse and William D. Turner, both of Boston, Mass. (Reginald Foster, George Hoague, and Foster & Turner, all of Boston, Mass., on the brief), for defendant in error.

Before PUTNAM and BINGHAM, Circuit Judges, and MORTON, District Judge.

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

BINGHAM, Circuit Judge. This action was brought by the Fore River Shipbuilding Company against the Southern Pacific Company, in the District Court for the District of Massachusetts, to recover the final payment of $100,000 under a contract in which the plaintiff agreed to construct and deliver to the defendant a steamship for use in its transportation service between the ports of New York and New Orleans, or, in the alternative, to recover the difference between the actual cost of the ship and the sums paid therefor by the defendant, and to recover the expense of certain repairs and alterations made in the ship by the plaintiff after it was delivered to the defendant.

The declaration contains four counts. The first count is to recover the final payment of $100,000, called for by the contract; the second is to recover $546,929.52, the difference between the alleged actual cost of the ship and the sum of $900,000, which the defendant has paid the plaintiff; and the third and fourth counts are to recover $120,572.-90 for expenses incurred in repairing and altering the ship on two occasions—the first occasion being after the first trial trip to New Orleans, when the expenditure amounted to $69,579.98, and the other after the tenth trip to New Orleans, when the expenditure was $50,992.92.

The case was originally heard by an auditor, who reported his findings. Later it was set for trial before a jury. At the trial the auditor's report and other evidence were introduced, and at the close of all the evidence the court directed a verdict for the defendant, subject to the plaintiff's exception. The case is now here on the plaintiff's bill of exceptions, and the errors assigned are to the order of the court directing a verdict for the defendant and to the exclusion of certain evidence.

In the contract it was provided that the defendant should pay for the steamship $1,000,000 in 10 payments of $100,000 each. The first payment was to be made when the keel was laid and the steel material was ordered, and the title to the ship and the material purchased therefor was thereupon to pass to the defendant. The ninth payment was to be made when the ship was delivered; the tenth, when the steamship was "finally accepted," and "when the performance of the vessel shall have equaled, in the opinion of the Pacific Company, in a satisfactory and substantial manner, the guaranty requirements herein set forth as to speed and coal consumption." The intervening payments became due at stated times as the work progressed. All of the payments, prior to the tenth, were met in accordance with the terms of the contract. The guaranty as to speed and coal consumption was that the steamship "shall, under such management as shall be agreed upon by the parties hereto to be proper, show, on a displacement not exceeding ten thousand (10,000) tons on sailing, on a round trip between New York and New Orleans, between the points of sea departure at each port, an average speed in ordinary weather of 16 knots per hour," and "that the total coal consumption when making the above-named speed under the above-named conditions shall not exceed an average of seven (7) tons of coal per hour, including auxiliaries, of a quality equal to the Clearfield, Berwind-White, or Cumberland, containing not less than fourteen thousand (14,000) British thermal units per pound."

[1] The evidence discloses, and the auditor has found, that 14 trial trips or tests under the guaranty were had, on none of which did the ship maintain an average speed of 16 knots per hour, or keep within the required coal consumption, and that on this account the defendant declined to accept the ship as complying with the guaranty, and to make the final payment of $100,000.

Assuming these facts to be true, the plaintiff contends there was evidence from which it could reasonably have been found that the ship was capable, under proper management, of complying with the terms of the guaranty, and was prevented from so doing through the negligence of the defendant; that the evidence would not only authorize a finding that the ship's failure to comply with the guaranty was due to a lack of skillful handling on these trips, but would also justify the conclusion that the engines, boilers, and machinery comprising the motive power of the ship were so damaged by the defendant's negligent conduct that the ship was prevented from doing what it would otherwise have accomplished; that the ship being capable, under proper management, of complying with the guaranty, and her structure being so damaged through the defendant's negligence as to prevent her complying therewith, it became the duty of the defendant to restore the ship to the capacity she possessed when received from the plaintiff, and upon the defendant's failure to do this the plaintiff would be excused from showing actual performance on the part of the ship under an agreed management in accordance with the terms of the guaranty.

The defendant contends that the guaranty calls for actual performance on the part of the ship; that it is therefore unimportant whether the ship was ever capable of complying with the guaranty; that the management for 14 trial trips was agreed upon in advance, on all of which the ship failed to meet the guaranteed requirements; and that if the ship's structure was damaged on these trips through the negligence of the officers and men employed, their conduct, they having been agreed upon in advance, would not be attributable to the defendant, and would not impose a duty upon it to restore the ship to the condition she was in when received, or excuse the plaintiff from seeing that she actually complied with the guaranty.

The auditor has found that during the voyages to New Orleans the ship was in the possession and control of the defendant, and the voyages were made as trips in its transportation service. This is but another way of stating that the officers and men employed on these trips were the servants and agents of the defendant, for whose conduct it was legally chargeable. The stipulation in the guaranty calling for an agreed management does not have the effect, when a management is agreed upon, of shifting the responsibility for the conduct of these officers and men from the defendant to the plaintiff. Its effect, as pointed out in our decision in Southern Pacific Co. v. Fore River Shipbuilding Co., 219 Fed. 378, 135 C. C. A. 120, is to preclude the parties from thereafter claiming or being permitted to show that the officers and men were incompetent, or their number inadequate, and leaves the responsibility for their conduct in the actual handling of the ship chargeable to the defendant, the same as it would have been had

the guaranty contained no such stipulation and no agreement as to the management had been made. Then, again, if the management of the ship on these trips was not agreed upon in advance, there could be no question but that the officers and men in charge of the ship were the servants and agents of the defendant, for whose negligent conduct in damaging the structure of the ship it would be responsible. We are therefore of the opinion that the contention of the plaintiff, as above set forth, presents the matter in the true light, and as there was evidence from which it might have been found that the ship on the three occasions when she was turned over to the defendant was capable of complying with the guaranty, and that her structure was thereafter so damaged by the negligent conduct of the officers and men who were under the defendant's control as to prevent her from complying therewith, that the court erred in directing a verdict for the defendant on the first count.

The contention of the plaintiff that it was also entitled to go to the jury on the first count, upon the ground that the finding of the auditor allowing the plaintiff to recover the final payment of $100,000 was some evidence of its right to recover that sum, cannot be sustained. To entitle the plaintiff to recover this payment it was incumbent upon it to prove: (1) That the ship under an agreed management actually fulfilled the terms of the guaranty to the satisfaction of the Southern Pacific Company; or (2) that the guaranty had been waived; or (3) that, while the ship was capable of complying with the terms of the guaranty, actual performance was prevented or excused by the defendant's conduct. An examination of the auditor's report shows that recovery was not allowed on either of these grounds, as he found against the plaintiff upon all of them. The theory upon which the auditor proceeded was that inasmuch as the Southern Pacific Company, in its action against the Fore River Company for breach of the guaranty, had allowed in its statement of damages (the damages claimed being the sum expended by the Southern Pacific Company upon the ship to enable her to meet the terms of the guaranty) an offset of the final payment of $100,000, the plaintiff was entitled to recover that sum in its suit on the contract. This was clearly erroneous.

Evidence of negligent management of the ship on the trips to New Orleans prior to the eleventh should not have been received. As pointed out in our opinion in Southern Pacific Co. v. Fore River Shipbuilding Co., the parties, by the arrangement which they entered into subsequent to the tenth trip, agreed to eliminate past differences; the Southern Pacific Company was to forego any right it then had to enforce the guaranty for failure on the part of the ship down to that time to meet the contract requirements as to speed and coal consumption; and the Fore River Company was to make the suggested repairs and alterations, and forego any right it had to insist that the previous trials had been negligently managed; and at a subsequent trial of the case the Fore River Company will be entitled to show that the ship, when she was returned to the Southern Pacific Company prior to the eleventh trip, was capable, under proper management, of complying with the guaranty in a substantial manner, and that her structure

was thereafter so damaged by the negligent conduct of the officers and men under the defendant's control as to prevent her from complying therewith.

[2] It has been suggested that under the terms of the contract the final payment was not to become due and payable, even though the ship on sailing over the designated course under agreed management equaled the terms of the guaranty; that it would become due only in case the turbine engines and water tube boilers proved entirely satisfactory to the Pacific Company; and that this sum was to be withheld by the Pacific Company to enable it to substitute reciprocating engines and Scotch boilers, if it concluded so to do. This plainly is not a correct view of the matter. According to the contract, the final payment was to become due when the performance of the ship under agreed management, in the opinion of the Pacific Company, equaled the terms of the guaranty as to speed and coal consumption in a substantial and satisfactory manner. If, therefore, we assume that, when trial tests under the contract are fairly conducted, and the performance of the ship, in the opinion of men in general, fairly complies with the terms of the guaranty, the performance of the ship under such circumstances would not fix liability for the final payment, as the defendant might still refuse to pay, because in its opinion the ship's performance does not equal the terms of the guaranty, it does not follow that the defendant can avoid payment, even though in its opinion the ship's performance does not equal the guaranty, if her failure is due to the defendant's misconduct. As we construe the contract, the ship is entitled to a fair trial. If it is not given one, the conditions never come into existence on which it is agreed the defendant may exercise its judgment; and if the failure is due to the defendant's misconduct, it waives its right to interpose, as a defense to a suit to recover the final payment, that in its opinion the ship's performance does not equal the terms of the guaranty and is not to its satisfaction. Daggett v. Johnson, 49 Vt. 345, 349; Singerly v. Thayer, 108 Pa. 291, 299, 2 Atl. 230, 56 Am. Rep. 207; Exhaust Ventilator Co. v. Chicago R. R., 66 Wis. 218, 28 N. W. 343, 57 Am. Rep. 257.

The provision in the contract—that "if the said turbines and boilers * * * do not prove entirely satisfactory to the Pacific Company, and if the said Pacific Company decides to install in said steamship reciprocating engines in place of steam turbines, and Scotch boilers in place of water tube boilers, then, and in that event, the Shipbuilding Company, at its own expense, will, if requested within six months after delivery of said ship, stiffen up the hull of said steamship as required by the Pacific Company—was inserted out of abundant caution, and to give the Pacific Company the right to require the Fore River Company, at its own expense, to stiffen the hull of the ship so that the Pacific Company could install reciprocating engines and Scotch boilers, if it so desired, notwithstanding the performance of the ship, equipped as she was, in its opinion equaled the terms of the guaranty in a substantial and satisfactory manner when the tests took place. If the last payment was not to be made until the Pacific Company was entirely satisfied with the turbines and water tube boilers, the parties

would not have provided, as they did, that it should become due when the performance of the ship equaled the requirements of the guaranty, but would have omitted that provision altogether, and made its payment dependent upon the turbines and water tube boilers being entirely satisfactory to the Pacific Company. This they did not do.

It is difficult to perceive what the ground is on which the plaintiff bases its right to recover under the second count. The defendant received the ship when it was ready for delivery, and made all its payments in accordance with the terms of the contract, down to and including the ninth. The tenth payment was not to become due until after the ship was subjected to tests under the guaranty, and was properly withheld to await their outcome. If the plaintiff's position is that the defendant did not have the right under the contract to require the alterations and changes that were made in the smokestack, shaft, and struts of the ship before she was delivered, and that its conduct in requiring them to be made, and that of the plaintiff in making them, operated as an abandonment of the contract by mutual consent, the evidence fails to warrant any such conclusion. In addition to the evidence above set forth, showing that payments to the amount of $900,000 were made by the defendant and received by the plaintiff under the terms of the contract, and that several of these took place after the changes were required to be made, it appeared that just prior to the delivery of the ship the plaintiff wrote the defendant, requesting it to arrange for insurance on the vessel when delivered "in accordance with paragraph 7 of the contract," and that the defendant stated, in a letter acknowledging the delivery of the ship, that she was received "subject to the terms of the contract," and that after certain trial tests were had the plaintiff sent the defendant a statement requesting payment of the last installment of $100,000. In fact, all of the evidence discloses that neither party acted upon the assumption that the contract had been abandoned, and a finding that it had been would not be warranted.

[3] Then, again, if the plaintiff's theory is that the defendant's conduct in regard to these changes operated as a breach of the contract, there is no evidence that the plaintiff has ever put itself in the position of rescinding the contract by returning or offering to return the payments made under the contract, or that it treated the contract as broken when the changes were required to be made. If the contract was then broken, that was the time for the plaintiff to have exercised its right to elect whether it would go on under the contract or treat it as rescinded, and, having chosen the former course, it is now too late to adopt the latter. Forbes v. Appleyard, 181 Mass. 354, 63 N. E. 894.

Furthermore, it seems to us that the evidence fails to disclose that these changes exceeded what the plaintiff could be required to make under the terms of the contract, and that the parties so understood the matter. They do not appear to have even regarded the changes as extras for which additional compensation could be had, for no agreement in writing was entered into before they were made, which was necessary under the terms of the contract in order to have them

treated as extras and to entitle the plaintiff to additional compensation therefor. The direction of a verdict for the defendant on this count was correct.

[4] After the first and tenth trips the ship was sent back to the plaintiff's yard at Quincy for alterations and repairs, and in the third and fourth counts of the declaration the plaintiff seeks to recover the expenses thus incurred. The auditor has found that there was no agreement, express or tacit, that the defendant should pay for these expenses. It appears that after the first trip the plaintiff obtained permission to test the ship on a trip to the Diamond Shoals, during which one of the engines broke down and her performance was generally unsatisfactory. This trip lasted some three days. Admiral Bowles, president of the plaintiff company, testified that at the end of the trip he was in New York, at the office of Mr. Jungen, the general manager of the defendant company, and was shown wireless messages from the ship, reporting her performance; that while there Jungen questioned him as to what should be done with the ship, and that he agreed she should go back to the yard at Quincy for repairs; that he then understood the changes and repairs that were to be made were to be at the expense of the Fore River Company, and that they were made at its expense. There was no evidence to warrant a verdict putting the expense of these repairs on the defendant.

The circumstances under which the ship was returned to Quincy for repairs and the installation of a forced draft, after the tenth trip, are fully set forth in our opinion in the action brought by the Southern Pacific Company. From what is there said it will be seen that the defendant's representative, on being requested to pay for the forced draft, in case it was installed, declined to bear any of the expense that was to be incurred, and that after being thus informed the plaintiff's representative agreed to take the ship back and make the changes and repairs for the purpose of making good under the contract.

Now, as on both of these occasions the expenses in question were incurred voluntarily, and in fulfillment of the plaintiff's obligation under the original contract, the law will not imply a contract on the ground of benefits conferred; and, as there was no contract in fact, apart from the original, for their payment, the court did not err in directing verdicts for the defendant on the third and fourth counts.

We do not deem it necessary, in view of the conclusions reached, to pass upon the other assignments of error.

The judgment of the District Court is reversed, the verdict is set aside, and the case is remanded to that court for further proceedings not inconsistent with this opinion, and the plaintiff in error recovers its costs of appeal.

PUTNAM, Circuit Judge (dissenting). The contract in this case is a very simple one, though the relations of parties are very peculiar and marked. The Fore River Shipbuilding Company was evidently interested in promoting the Curtis marine turbines and water tube boilers, which were apparently in an experimental state at the time the contract in this case was made. The contract shows on its face that the Fore River Shipbuilding Company was sufficiently desirous of

securing the practical success of those turbines and boilers to take a considerable hazard in reference thereto. It was therefore agreed that the ship in controversy should be constructed with those turbines and water tube boilers, in accordance with the detailed terms of the contract in suit. The contract, consequently, provided that if the turbines and boilers referred to in the plans and specifications attached to the contract did "not prove entirely satisfactory to the Pacific Company, and if the Pacific Company decided to install in the steamship reciprocating engines in place of steam turbines, and Scotch boilers in place of water tube boilers, then and in that event the Shipbuilding Company, at its own expense, will, if requested within six months after delivery of the ship, stiffen up her hull as required by the Pacific Company." Then follows the guaranty set out in the opinions, which we need not repeat. Then comes the stipulation for payments for the steamship, which concludes as follows:

"One hundred thousand dollars when the steamship is delivered to the Pacific Company.

"One hundred thousand dollars when the steamship is finally accepted by the Pacific Company.

"The final payment of $100,000 shall be made when the performance of the vessel shall have equaled, in the opinion of the Pacific Company, in a satisfactory and substantial manner, the guaranty requirements herein set forth as to speed and coal consumption."

It is apparent that the Fore River Company was to have advantage of a fair test, whatever it might be worth, to be made by the Pacific Company before the parties undertook to determine whether or not the guaranty was complied with. But it is also clearly a part of the contract that the Southern Pacific Company should not be required to make the final payment for the ship of the $100,000 now in controversy, unless, in the judgment of the Southern Pacific Company, she complied with the guarantee. It was not enough that she did in fact comply with the guaranty; but the Southern Pacific Company was to be relieved from all hazard in reference to this experiment, according to its own judgment, and it was not to be required to take any chances as to compliance with the guarantee, so far as its own judgment was concerned. Clearly, in this respect, the contract was a personal matter, and the judgment of the Southern Pacific Company was not to be forestalled or superseded by the judgment of any other persons or of any tribunal, whether it was court or jury, judges or arbitrators. The Southern Pacific Company was to be guarded from exactly the kind of controversy which has appeared in the cases before us. The arrangement was a very peculiar one. The Southern Pacific Company was to make the trial of the ship, and to take possession of her before she was actually completed, and before final payment of the last $100,000 was due, and whatever else might have happened, the Southern Pacific Company was left with this $100,000 in its own hands as a fund to cover the installation of reciprocating engines and Scotch boilers, or their equivalents.

Under this contract we are not called on to say what the rights of the parties might have been if the conditions had been such as suggested by the opinion of the court, because the Southern Pacific Com-

pany sought to protect itself at all events from being drawn into litigation of the kind which has occurred. So far as the $100,000 are concerned, this is a suit on the contract itself for the recovery of part payment provided for by it, and we are not called upon to say what the rights of the parties might have been if the Fore River Company had brought suit for a breach of duty or obligation as thus suggested.

In the suit of the Southern Pacific Company against the Fore River Company the present condition did not arise in its present precise form, with the burden resting on the Fore River Company at the outset of its litigation to show that it had fulfilled the contract in accordance with its terms. Therefore we were not led into the consideration of any proposition such as that now submitted, but only of the proposition whether or not, in a suit on the contract itself, the Fore River Company could maintain with propriety that the Southern Pacific Company was liable for this final payment of $100,000, except on precise proof by the Fore River Company that the ship had actually proved herself to have conformed to the terms of the contract in the judgment of the Southern Pacific Company. As no such issue was presented, or could have been presented, the judgment of the court should have been, on that part of the case, for the Southern Pacific Company.

The other issues in this case failed to show any contract, expressed or implied, raising any obligation for the payment of the moneys demanded. Consequently judgment on those parts of the case should have been for the Southern Pacific Company, and all the interlocutory rulings in relation thereto necessarily proved ultimately immaterial. The judgment of the District Court in this suit for the Southern Pacific Company was right, and it is inconsequential whether the reasons given therefor were right or not.

The law of the case has, however, been settled by the court on this writ of error, and also on the cross-writ of error, to be otherwise than as viewed by us. We must accept the law, of course, as stated by the court, notwithstanding our views expressed in dissent. The result is that on this writ of error it is ordered that there shall be a new trial; that on that new trial the Fore River Company will be entitled to show, to use the language of the court, that there was, or may be, "evidence from which it might have been found that the ship, on three occasions when she was turned over to the Southern Pacific Company, was capable of complying with the guaranty, and that her structure was thereafter so damaged by the negligent conduct of the officers and men who were under the Southern Pacific Company's control as to prevent her from complying therewith." On the other hand, on the cross-writ of error there will be a new trial, as to which the court has decided that the verdict and judgment for the Southern Pacific Company in the case of $3,183.43 and costs were correct, so far as they went, and that the verdict therefor should be allowed to stand, and that any other sums found due the Southern Pacific Company may be added thereto; that the ship having failed on the eleventh, twelfth, thirteenth, and fourteenth trips to comply with the guaranty, the Southern Pacific Company may prove, among other things, that the failure of the ship to comply with the guaranty was due to her inability to fulfill the con-

tract, and not to actual mismanagement on those trips; and that additional damages may be recovered, as stated in the opinion.

Beyond this, the opinion of the court on this writ of error holds that the amounts claimed on the second, third, and fourth counts in this suit cannot be recovered, as to which we have already expressed our concurrence with the court. We express no opinion whether the judgments ordered by the conclusions of the court on its opinions, on this writ of error and the cross-writ, can be worked out harmoniously.