## SHACKLEFORD *v.* CAMPBELL.

## Opinion delivered December 1, 1913.

1. PUBLIC BUILDINGS—ERECTION—CHANGES IN PLANS.—The Constitution and statutes of Arkansas governing the erection of public buildings do not prohibit the contract for the erection of the same from providing for necessary changes in the plans and specifications. (Page 362.)

2. PUBLIC BUILDINGS—CONTRACT FOR ERECTION—CHANGES IN PLANS.—There being no Constitutional or statutory inhibition against necessary changes in a contract for the erection of a public building, the making of such necessary changes will not render the contract void. (Page 362.)

3. PUBLIC BUILDINGS—CONTRACT FOR ERECTION—NECESSARY CHANGES.—It is proper for the county to change the contract for the erection of a courthouse, if the completion of the work can be expedited thereby, more space and better construction obtained, and a saving of money made, 'where the contract for the erection of the building provided that such changes could be made; but the substantial character of the building must be left as it was under the original plans and specifications. (Page 363.)

4. PUBLIC BUILDINGS—CHANGE IN PLANS—FRAUD.—Where changes were made in the plans for the construction of a county courthouse, which were reasonable and necessary, evidence held insufficient to show that the county judge, commissioner, architect and contractor acted fraudulently in making such changes. (Page 366.)

5. APPEAL AND ERROR—FINDINGS OF FACT BY CHANCELLOR—FINALITY.—The findings of fact made by a chancellor, will not be disturbed on appeal, unless they are against the clear preponderance of the evidence. (Page 367.)

Appeal from Pulaski Chancery Court; *Jno. E. Martineau*, Chancellor; affirmed.

STATEMENT BY THE COURT.

This is a proceeding by appellant, a taxpayer of Pulaski County, against appellees to restrain them from proceeding further in the erection of an annex to the Pulaski County courthouse. The county court deemed it expedient to erect an annex to the present courthouse, and the quorum court made an appropriation for that purpose. Gordon N. Peay was appointed commissioner of public buildings, to superintend the erection of the same. George R. Mann was appointed architect, and, as

such, prepared and submitted to the county court complete and detailed plans and specifications of the proposed annex, with the dimensions thereof and the materials of which it was to be composed, with an estimate of the probable cost thereof. The plans were approved by the county court, and the commissioner advertised for receiving proposals for erecting the building, to the lowest and best bidder. In July, 1912, the contract was awarded to A. O. Campbell at the sum of $565,987, he being the lowest and best bidder; and a formal contract was executed to erect the building according to the plans and specifications.

The specifications called for a four-story, fire-proof courthouse building, to be erected on the corner of Spring and Markham Streets, in the city of Little Rock, Pulaski County, Arkansas. The proposed building adjoins the site of the present courthouse. The first story was to be of Arkansas granite, and the remaining stories of Bedford stone. The interior was to be a steel frame construction, with brick masonry partition walls, and fireproof windows were to be constructed on the west side, next to the Quapaw Club. After the contract was executed for the erection of the building, and soon after the excavation for the foundations was commenced, certain changes in the construction of the building were suggested. It was ascertained that it was not practical to quarry Arkansas granite in sufficient quantities to erect the building within a reasonable time, and that a delay of more than one year would be caused if the walls of the first story should be constructed of that material. It was agreed that the first story should be constructed of Batesville stone, instead of Arkansas granite, and a deduction in the contract price of $2,374 should be allowed the county by reason of the change in the stone. After the contract was made, the county purchased the ground occupied by the Quapaw Club building, and tore down that building. It was then deemed unnecessary to construct the fire-proof windows, and they were changed so as to conform to the other windows in the building. It

was also found out that great delay would be had in procuring the steel for the interior work, and this was changed to reinforced concrete construction, and a deduction, on account of the change in the windows and the change to reinforced construction, was to be allowed the county in the sum of $7,180.

The original contract provided, in effect, that the county court should have the right to make any alterations, additions or omission of work or material or in designs and plans, during the progress of the erection of the building, that it should find necessary. It is conceded by appellant that the original contract was executed in conformity with the provision of article 19, section 16, of the Constitution, and with chapter 35 of Kirby's Digest, and that the same is valid in all respects. The county court, by appropriate orders, approved the changes as set out above, and the contract was modified so as to allow them to be made. It is contended by the appellant that these changes were made without authority of law, and that they render the whole contract void. Appellant also contends that the changes were procured by fraud and, on that account, the contract is void. The present suit was commenced on the 1st day of August, 1913, and at that time the change from Arkansas granite to Batesville stone, for the first story, was finished, and the greater part of the changes made in the interior, as provided for in the modifications of the contract, was also completed. Appellees file an answer in which they denied any fraud on their part in making the changes, and alleged that the reduction made on account of the changes is fair and adequate, and represents fairly the difference in the cost of construction. They also claim that under the contract they had a right to make the changes. Other evidence heard before the chancellor on the trial of the case will be stated in the opinion. The chancellor dismissed the complaint for want of equity, and the cause is here on appeal.

*Shackleford & Riegler,* for appellant.

1.   The changes made were not necessary, and were therefore without authority of law.   12 L. R. A. 502; 65 Ark. 550; 82 Ark. 592; 71 Ark. 199; 155 Mich. 11; 16 Ann. Cas. 346; 53 Kan. 358; 1 Pa. Sup. Ct. 9.

2.   Material changes in the contract, or a new contract, could not be made by order of the county court. Constitution 1874, art. 19, § 16; 54 Ark. 645; 5 Ark. 651; 92 Ark. 254; 65 Ark. 552; 37 Mo. App. 466; 22 Ind. 388; 10 Ga. 235; 82 Ark. 592; 11 Col. App. 394; 114 Ga. 245; 11 Neb. 484; 19 O. St. 97; 54 Miss. 240; 48 Pa. 527.

*Cockrill & Armistead* and *Marshall & Coffman,* for appellees.

1.   The orders of the county court directing the changes in the plans and specifications were authorized by the Constitution and statutes, and are valid.   Constitution, 1874, art. 7, § 28; 102 Ark. 277; Kirby's Dig., § § 1009 to 1023, inclusive; 73 Ark. 523; 57 Fed. 1030; 24 N. E. 366; 24 N. E. (Ind.) 115; 27 N. E. (Ind.) 612; 63 N. E. (Ind.) 982; 75 N. E. (Mass.) 954; 84 N. W. (Wis.) 430; 125 N. W. 866; 33 N. E. 243; 45 Fed. 217; 11 Cyc. 485; 32 O. 208.

Statutes usually give county courts the right to build courthouses whenever they think it expedient or necessary, and it is uniformly held that the county court has exclusive power to determine the necessity for the erection, which power can not be controlled in the absence of fraud or corruption, or facts showing it is so manifestly wrong or prejudicial as to create a conviction that it was the result of fraud and a plain disregard of official duty. 137 Ala. 155, 34 So. 17; 39 So. 167; 209 Ill. 142, 70 N. E. 610; 141 Ind. 522, 40 N. E. 1079.

Counsel review the evidence and conclude that the changes made were necessary and not material.

2.   The specifications containing the reservation of the right to make necessary changes and alterations were filed in the county court October 16, 1911.   The contract containing that provision was approved by the court's

order dated July 26, 1912, in which order the contract was spread at length on the record. Appellant filed suit on August 1, 1913, after all the changes ordered by the county court had been practically completed. He is estopped by laches from asserting that the contract is void. 55 Ark. 148.

HART, J., (after stating the facts). Article 19, section 16, of our Constitution provides that the contracts for erecting or repairing public buildings or bridges in any county, or for materials therefor, shall be given to the lowest responsible bidder under such regulation as may be provided by law. Appellant contends that under this provision of the Constitution, and under chapter 35 of Kirby's Digest, the county court had no authority to order the changes made in the plans and specifications, and that the changes, as made, render the contract void. He relies upon the case of *Fones Hardware Company* v. *Erb*, 54 Ark. 645, to sustain his contention; but we do not think that case an authority for the position he has assumed. There, general plans were adopted for building a bridge across the Arkansas River in Pulaski County, and competitive plans and specifications were advertised for and received by the board of commissioners. Each bidder prepared his own plans and specifications and made his bid thereon, and the court said that it was plain that no two of the bids would be made upon the same basis, unless by accident, and therefore, under such a plan, there could be no competition among bidders. This was a palpable violation of the Constitution and statute regulating the erection of public buildings and bridges. Here, complete detailed plans and specifications were prepared by the architect and adopted by the county court. The advertisement for bids was made in accordance with the plans and specifications adopted; and it is perfectly evident that each bidder bid upon the same plans and specifications, and thus competitive bidding was secured.

It is conceded by appellant that the original contract was let in accordance with the provisions of the Consti-

tution and statutes above referred to; but he contends
that the modification of the contract was made without
authority of law, and that this rendered the whole con-
tract void. The original contract contained a provision
that modifications of it might be made. The evidence
shows that it is usual to insert in contracts for the erec-
tion of buildings of any magnitude provisions for modi-
fications in the contract, so that necessary changes or
alterations in the plans of the building may be made, and
such clauses have been generally held to be valid when
applied to contracts made between private individuals.
In the absence of constitutional and statutory prohibi-
tion, there seems to be no good reason why such a clause
may not be legally inserted in a contract for a public
building. The power so to do is recognized in 11 Cyc.
485, but the author adds that in no event can the county
board or court make important general changes in the
plans of the building, and cites in support of the text the
cases of *Gibson County* v. *Cincinnati Steam Heating
Company,* 128 Ind. 240, 12 L. R. A. 502, and *Kitchel* v.
*Union County,* 123 Ind. 540, 24 N. E. 366. Under the laws
of Indiana, as in this State, contracts for the erection of
public buildings must be let at public bidding after the
plans and specifications have been adopted and filed in
accordance with the statute. In the case last mentioned,
certain taxpayers sought to enjoin the county from pro-
ceeding in the erection of the courthouse upon the
ground that the specifications submitted to the bidders
permitted alterations and changes. The Supreme Court
of Indiana held that the objection was unavailing, and
said that no prudent individual would make a contract
for the construction of a building of any magnitude with-
out incorporating a provision somewhere making spe-
cific and definite agreements concerning extra work, and
that the provision complained of seemed to be of that
character. In the first mentioned case, plans and speci-
fications were adopted for the construction of a court-
house as required by law, and it was contended that there
was no authority to contract for a steam heating appa-

ratus for the reason that no plans or specifications were ever filed therefor and that the contract was not let at public bidding as required by the statute. In discussing an objection that the board had no authority to contract for the steam heating apparatus, the Supreme Court of Indiana said: "In our opinion, the statute was not intended to prevent changes in plans and specifications from being made in cases where it became apparent in the progress of the work that changes are required. We do not mean to be understood as holding that changes in the general plan of the work may be made at the pleasure of the board of commissioners, but we do mean to adjudge that changes may be made in details and minor particulars."

In the case of the *Board of Commissioners* v. *Gibson,* 63 N. E. (Ind.) 982, the court again had occasion to discuss the question. In that case, a contract to construct a courthouse was let, in accordance with the statute, to the lowest bidder, for $76,000. The contract contained a provision allowing changes and alterations to be made. After the contract was executed and the excavation for the building was commenced, it was discovered that, owing to the character of the soil, the foundation would have to be laid much deeper than was provided for in the contract. It was them suggested that a sub-basement could be added for very little more cost, and this was done at an additional cost of $20,000. The court held the modification thus made in the contract was valid, and in discussing the objections to its validity, said:

"The statute referred to was intended as a safeguard of the public interest, and we are disposed to enforce it according to its spirit. We do not think, however, that it was intended to apply to a case like this, where a sudden and unforeseen emergency confronts a board of commissioners after it has regularly let a contract for a public building, and where it is to be desired to avoid delay, and not to put a new contractor on the work, but to have the work continued by the general contractor for the construction of the building. In such a

case, where it can be said that the new work is but an incident of a work before regularly contracted for, and where it does not appear that the act of the parties was a mere effort to evade the statute, we do not think that the statute is applicable.''

The court also said:

''Where the parties act in good faith, the authority of the board to make changes without complying with the statute referred to should be determined, not primarily by the cost of the change, but by the relation that the change bears to the main work, and the circumstances that confront the commissioners when they order the change.''

In the case of *Mueller* v. *Eau Claire Co.,* 84 N. W. (Wis.) 430, the court said:

''A clause in the contract provides that: 'Should said committee, at any time during the progress of the work of said heating plant, require any alteration, addition or omission from the work specified the same shall be done, and shall not affect or avoid this contract, and will be added to, or deducted from, the contract price, as may be, by a fair and reasonable valuation.' Upon this the plaintiffs attempt to found an argument that it is an evasion of the statute, which says that the board shall prepare 'complete' plans and specifications for the work. This 'smacks of over-refinement.' It is the clause usually put in building contracts to enable the owner to make changes, correct mistakes, or cause additions or omissions in order to make the building more truly conform to its intended use. It must be construed reasonably, and, so construed, would, of course, limit the changes to such as would not alter the substantial character of the buildings, or increase its cost to an unreasonable amount.''

Our Constitution and statutes governing the erection of public buildings do not prohibit the contract from providing for necessary changes in the plans and specifications; and when this fact is considered in connection with the principles of law announced in the cases above re-

ferred to and quoted from, we do not think the modification made in the original contract for the erection of the annex to the courthouse rendered the contract void.

When the original contract was executed, the Quapaw Club building was situated close to the proposed annex, and it was deemed proper to provide for fire-proof windows next to that building. Subsequently, the county purchased this building and tore it down. The fire-proof windows then became unnecessary, and the county court properly changed the contract so as to dispense with them.

The evidence shows that the public needs required that the annex to the courthouse should be erected as expeditiously as possible, and that it would cause a delay of more than a year if the original plan of constructing the exterior of the first story of Arkansas granite should be adhered to. The Batesville stone was substituted in its place, and the substitution made no difference whatever in the appearance of the building, except in the color of the stone. Both stones were suitable for the erection of the kind of building under construction, and there appears to be no difference in their suitableness for that purpose as far as durability is concerned. Therefore, it was entirely proper to make this change.

The building, as originally contemplated, was not what is commonly known as steel construction, but was a combination of steel and masonry construction. The steel construction was supported on brick walls; in other words, the interior walls were built of brick. On these brick walls were to be placed steel I-beams, resting from one brick wall to another at intervals of from six to ten feet. On top of that was placed a reinforced concrete slab. The roof was to be constructed in like manner, except that it was to be made of cinder concrete.

The change to reinforced concrete construction gave about 6,000 square feet of additional floor space. The evidence shows that the reinforced concrete construction makes a better kind of building than the construction under the original plan, because the building is put

up independent of the walls, and the interior arrangement of the building can be easily changed. Under the plan of the original construction, the interior arrangement of the building could not be changed, because the brick wall supported the building. The testimony shows that the reinforced concrete construction was as durable as that provided for under the original plan, and that the interior arrangements of the building can be easily changed under the altered construction, for the simple reason that the partitions are carried independent on each floor and that the interior wall can be shifted about in any way required. Under the original plans and specifications, the work was let to Campbell for the sum of $565,987. Under the contract as modified, the county was allowed the sum of $9,554 on account of the changes made in the construction of the building. No change has been made in the general plans of the building. It presents the same general appearance, both on the interior and exterior of the building, except that the color of the stone on the first floor is different. The substantial character of the building remains as it was under the original plans and specifications.

When we consider the cost of the change as compared with the cost of the whole building under the original contract, and the relation of the changes made to the whole building, and the necessity for the same, as well as the conditions which confronted the county court and the courthouse commissioner, inducing them to make the change, we are of the opinion that, under the terms of the original contract providing for changes in the building during the progress of the work, they had a right to make these changes, and that they did not render the contract void. We do not mean to hold that they had a right to change the general plans of the building and construct a building of wholly different kind and character from that provided for under the original contract. To do so would be a palpable evasion of the Constitution and statute regulating the erection of public buildings, and would constitute fraud. But we do not think the

changes made in the erection of the courthouse annex were of that character, and are of the opinion that they did not change the substantial character and general plan of the building.

It is also contended by appellant that the changes and modifications made in the original contract were procured by fraud. The county judge, the courthouse commissioner, the architect, and the contractor all testified that the reduction made on account of the changes is fair and adequate, and represents the difference in cost of construction. They say that the changes were made honestly and in good faith and because it was necessary to do so in order not to unduly delay the erection of the building.

The evidence on the part of appellees shows that the Batesville stone was placed in the first story before this suit was commenced, and that the change in the interior construction from steel and masonry to reinforced concrete was practically completed before the suit was instituted. The contractor testified that on this account he knew exactly what the changes cost, and that he did not charge any profit to the county, but only required the county to pay him the actual cost of construction, as far as these changes are concerned. He took up the plans and specifications in detail and showed what the work actually cost. He also took the original plans and specifications, and, in a detailed manner, showed what the cost would have been under them. He said the reductions allowed to the county actually represented the difference in cost of construction. Witnesses who were engaged in cut stone, marble and granite work in Little Rock, Arkansas, testified that they were familiar with the prices of Arkansas granite and Batesville stone, and knew the difficulties in procuring the Arkansas granite. They took the detailed plans and specifications of the original contract for the Arkansas granite, and the detailed plans and specifications under which the Batesville stone was substituted for the Arkansas granite, and, after figuring and estimating the difference in the cost

of the two stones, say that the reduction allowed the county by the contractor was fair and represented the actual difference in the cost of substituting the Batesville stone for the Arkansas granite.

Other witnesses who had had great experience in constructing buildings of reinforced concrete took up the original plans and the changed plans in detail, and testified that the reduction made, represented the actual difference in the cost of substituting reinforced concrete for steel and masonry construction on the interior of the building. The testimony shows that the change gave an additional floor space of six thousand feet, and that the reinforced concrete construction was as durable and more desirable than the construction provided for in the original contract because the interior arrangement of the rooms could be changed if it became desirable in the future to do so..Opposed to this is the testimony of appellant's witnesses as to the difference of the cost of the building, as originally planned, and of the same as changed. None of these witnesses took up the plans and specifications in detail and figured as to the difference in cost. They only testified in a general way that the cost would have been much less under the original plans and specifications. One of them frankly admitted that his estimate was only a guess; and the others admitted that their testimony was not based upon an examination of the detailed plans and specifications, but was made from their general knowledge of the matter.

Without meaning in any way to reflect upon their integrity and honesty of purpose, we do not think that the general declarations made by them are sufficient to overcome the testimony given by the witnesses for the appellees, as above set forth, and establish fraud. We have not attempted to set out in detail the testimony of the witnesses on the question of fraud. To do so would extend the opinion beyond reasonable limits and could serve no useful purpose. The testimony is set out at length in the abstracts of both parties, and we have carefully and patiently considered it and weighed it in all its bearings,

and have reached the conclusion that the finding of the chancellor in favor of appellees is not against the preponderance of the evidence. It is well settled in this State that the findings of fact made by a chancellor will not be disturbed on appeal unless they are against the clear preponderance of the evidence.

The decree will, therefore, be affirmed.