[Civil No. 2040.   Filed May 15, 1923.]

[215 Pac. 161.]

# COUNTY OF GREENLEE, a Corporation, and W. J. COLLINS, as Treasurer of Said COUNTY OF GREENLEE, Appellants, v. FRANK A. WEBSTER, JAMES H. KERBY and GEORGE WEBSTER, as the Administrators of the Estate of REECE R. WEBSTER, Deceased, Appellees.

1. HIGHWAYS—PROVISION FOR CHANGES IN PLAN AND LOCATION OF ROAD AUTHORIZES ONLY CHANGES INCIDENTAL TO MAIN CONTRACT. A contract provision for changes in plans and location does not authorize changes that radically extend the amount of work, or that eliminate large portions of the work, or that greatly increase the cost thereof, but only such alterations as are incident to and in aid of the main contract and covered thereby.

2. HIGHWAYS—ROAD CONSTRUCTION CONTRACT PROVISION THAT EXTRA WORK BE ON A COST PLUS BASIS HELD UNAUTHORIZED BY STATUTE. Under Civil Code of 1913, paragraph 5124, providing that construction of highways shall be under contract to the lowest responsible bidder after thirty days' advertising, or under a wage system by the board of supervisors without a contract, a provision of a road construction contract that extra work, which could not be covered by the various items or combination of items for which there was a contract unit price, was to be paid for on a cost plus basis, was invalid.

3. CONTRACTS—DEVIATIONS DO NOT NECESSARILY ABROGATE OR IMPLY ABANDONMENT OF CONTRACT—DEVIATIONS FROM CONTRACT BY CONSENT OF PARTIES HELD COMPENSABLE UNDER TERMS OF CONTRACT IN SO FAR AS APPLICABLE.—Deviations or changes in a contract do not necessarily abrogate it or imply its abandonment, but the general rule is that where the deviation is by consent of the parties, the contract will be applied to the extra work, in so far as it furnishes a conventional admeasurement of the value which the parties have placed on the work.

4. HIGHWAYS—SUBSTANTIAL CHANGES IN PLANS AND LOCATION HELD NOT "EXTRA WORK," UNLESS NOT COVERED BY UNIT BID PRICE.— Where a road construction contract provided that the contractors' compensation was to be a fixed unit price for each class of work

---

4. Contractor's right of recovery for extra work as affected by nature of order, see note, in 7 **Ann. Cas.** 213.

multiplied by the number of such units in the completed work, and the county engineer during the course of construction made substantial changes in the route, which greatly increased the expense of construction, because of the increased rock excavation of a harder formation required, *held*, the contract provision that all alterations and changes in plans and specifications should be classed as "extra work," to be paid on a cost plus basis, where not covered by the various unit prices or combinations of unit prices, even if such provisions were valid, did not give the contractor the right to compensation on the cost plus basis for such changes merely because of the increased cost, where all of the work done was covered by the unit prices, as such work could only be classed as extra work, if not covered by the unit prices.

5. HIGHWAYS—ON EXTRA HIGHWAY CONSTRUCTION NOT AUTHORIZED IN WRITING, CONTRACTOR COULD RECOVER ONLY REASONABLE VALUE THEREOF.—Where a road construction contract provided that compensation for extra work, which could not be covered by the unit bid prices should be on a cost plus basis, and that such work should be done only on the written order of the county engineer, *held*, that, in the absence of such written order, whatever the cause, the contractor could only recover the reasonable value of the labor and materials furnished.

APPEAL from a judgment of the Superior Court of the County of Graham. W. R. Chambers, Judge. Judgment reversed and cause remanded, with direction that demurrers be sustained.

Mr. Claude Hooker, Mr. H. A. Elliott and Mr. Dave W. Ling, for Appellants.

Mr. L. Kearney, for Appellees.

ROSS, J.—The plaintiffs, as the lowest responsible bidders, were on March 17, 1919, given by the defendant county the contract to construct and improve some thirty-three miles of the Clifton-Springerville road, beginning with section 1 and extending to station 1835-31, section 7. The plaintiffs began the work of actual construction immediately thereafter. The

5. Effect of stipulation that alterations or extras in public contracts be ordered in writing, see note in 48 L. R. A. (N. S.) 595.
See 9 C. J., pp. 721, 850; 29 C. J., 605, 609.

county, acting through its board of supervisors and engineer, in the progress of the work, made many alterations in the plans and specifications, resulting in the alteration of the quantity, location and extent of the work as originally estimated and described in the contract. This action grows out of these alterations, or some of them; the plaintiffs claiming that they were unreasonable and had the effect of changing the general character of the contract.

The alterations complained of were all made in section 1 of said road, and after such section was completed and paid for as per the certificates of the county engineer, but before the rest of the road was finished, the plaintiffs made out and presented to the county for allowance their verified demand for $28,048.51, as a balance due them on account of such alterations. This demand was presented to the board of supervisors of defendant county on June 7th and disallowed on September 8, 1920.

The complaint, which was thereafter filed, contains 218 pages of printed matter. It is neither possible nor necessary to do more than refer to its contents in a general way, except those portions thereof that have to do with the right to alter the plans and specifications, and define what shall constitute "extra work." Besides setting out bodily in the complaint the specifications, proposal and contract, and making a part thereof by inference the plans, maps and profiles, the plaintiffs have inserted therein *in haec verba* their demand against the county.

Just what alterations in the plans and specifications were made and what was done to change the general character of the contract cannot be determined from any allegation of the complaint independent of the demand on the defendant county. There is no positive statement or allegation in the .

complaint as to what change or alteration was made, its extent or locality. Referring to the demand against the county we find it prefaced by a long argument by the plaintiffs, in which it is stated that two changes in the location of the roadbed had been made, and those changes are therein described as follows:

*Change No. 1:*

"The original location practically followed the bed of Chase creek, making all work on same easily accessible by wagon, and necessitating that the material excavated be moved only once. Now, the change as made throws the alignment as far as 1,000 feet from the original alignment, changing the general character of items discussed below, making two overhead railroad crossings, and placing alignment above two railroads for the greater part of this change, thus necessitating the moving of the material excavated (different in character from the material on the original location) three different times, causing damage to above-mentioned railroads which had to be repaired at the contractor's expense; the actual cost of such damage is shown in cost sheet hereto attached. Furthermore, it greatly increased the danger of damage to life and property of the inhabitants of Metcalf; this actual damage is shown in cost sheet hereto attached. Furthermore, all materials used upon the construction of this piece of road had to be packed by pack animals and men, instead of by wagon, as could have been done, had the original location been adhered to, thus greatly increasing the cost of the contractors over and above what the cost would have been on the construction of the original location as bid upon a majority of the items contained in the original contract and specifications.

"Under what is designated as change No. 2 by us from station 123–00 to station 156–66, it is our contention that this change did throw in parts of same the alignment entirely across what is known as Chase creek (see map hereto attached), increasing

the yardage over and above the original alignment approximately 9,139 cubic yards, and did change the general character of the contract as to material excavated. The original location of this part of the road ran through the common quartzite of the district, and the excavation would have been comparatively light, but the alignment as changed greatly increases the excavation, as stated above, and throws the excavation into a blue irony quartzite, the hardest and most expensive rock in the district to excavate.

"Now, in summary of the above: In the parts of the road that we are not considering, changes as designated by station 71–90 to station 123–00 and station 156–66 to station 277–48.6, alterations were made both in alignment and quantities, etc., but as per our contention above, these alterations were not great enough to change the general character of the work (contract), excepting bridges and class B concrete .as shown below, and make the work per unit of the contract, cost the contractors more than the same unit of the contract would have, had the road been allowed to remain in the original place as bid upon by the contractors."

In the specifications furnished prospective bidders the work was classified according to its kind and character, for instance, as "Clearing and Grubbing," "Rock Excavation," "Common Excavation," "Overhaul," "Class A, B, and C Concrete," etc., or twenty-six different items of work and material. The plaintiffs submitted to the defendant county a form proposal containing an estimate of the quantity of each of the twenty-six classifications of work set out in the specifications, wherein they proposed to furnish all necessary machinery and apparatus, and all work and materials to finish the entire project, and to accept as full compensation the amount of the summation of the products of the actual quantities, as finally determined, multiplied by the unit bid prices. In the proposal plaintiffs stated it to be their understanding that the estimated quantities were ap-

proximate only, and subject either to increase or decrease, and whichever it might be they proposed to perform all quantities at the unit bid prices. The itemized proposal gave the approximate quantity of each item and the price bid per unit, and the product of these two, as for example:

70,121 cu. yds. excavation (rock) @ $1.36 per cu. yd.....$95,364.56
1,600 lbs. reinforcing steel @ 7½¢ per lb...............  120.00
22,000 ft. b. m. timber trestle bridge material, in place,
    including bridge iron, at $90.29 per M............... 1,986.38

The product of the twenty-six classifications, by the bid price, totaled $236,329.42. This total was not the contract price that plaintiffs were to receive for constructing the road, but was for the purpose of comparing bids. Under the terms of the contract it might be increased or decreased. The particular provisions of the contract involved are the following, found in the specifications:

"*Alterations.*—The engineer shall have the right to make such reasonable alterations in the plans and specifications as in his judgment are necessary and desirable, and such alterations will not invalidate the contract. Reasonable alterations will be construed to mean alterations in the quantity, location, or extent of the work covered by the various items of the bid, but will not be construed to cover any alterations in the general character of the contract.

"All orders making alterations in the plans and specifications shall be given by the engineer to the contractor in writing. Alteration work done by the contractor without such written orders, except in cases of emergency, and acknowledged as such by the engineer, will be at the contractor's own expense and will not be paid for under his contract for this work. The final adjustment, covering increases, decreases, or eliminations, caused by alterations, will be made on the basis of the unit price bid for the item or items concerned, and no allowance will be made on account of any claim for loss of profit due to the alteration.

"*Extra Work.*—Alterations or changes in the plans and specifications and new or unforeseen items of work shall be classed as extra work, when they cannot be covered by any of the various items or combination of items for which there is a bid price. The contractor shall furnish such labor, teams, equipment, supplies, and materials as are necessary and perform such extra work as may be ordered in writing by the engineer whenever necessary for the proper completion or construction of the whole work herein contemplated, and he shall make no claim for extra work unless it shall have been done in obedience to such written order.

"The contractor shall receive for such extra work the actual cost of all supplies and materials, including freight, furnished by him, as shown by his paid vouchers, and a reasonable rental charge previously agreed to in writing between the engineer and the contractor for the use of special equipment or machinery, such as steam rollers, steam shovels, concrete mixers, etc., required for the economical performance of the work; for such labor and teams as are necessary he shall receive the current prices in the locality, which shall have been previously agreed to in writing by the engineer and by the contractor, plus 15 per centum of the cost of such labor and teams which shall be considered as full compensation for general supervision and the furnishing of small tools and ordinary equipment used on the contract, such as plows, fresnos, wagons, graders, etc.

"*Unauthorized work.*—No payment will be made for work not required by the plans and specifications or authorized in writing by the engineer."

And the following provision, set forth in the body of the contract:

"That said work shall be performed in accordance with the true intent and meaning of the plans and specifications therefor, which are hereby referred to and made a part of this contract, without any further expense of any nature whatsoever to the county than the consideration named in this contract. The county, however, reserves the right to make such additions, deductions, or alterations as it deems

necessary, making an allowance or deduction therefor
at the prices named in the proposal for his work,
and this contract shall in no way be invalidated
thereby; and no claim shall be made by the con-
tractor for any loss of anticipated profits because of
any such change or by reason of any variation be-
tween the approximate quantities and the quantities
of the work as done.''

It was also provided in the contract that payment
for work should be made monthly, upon estimates
by the engineer, to the amount of eighty-five per
cent of such estimates, and that the balance of
fifteen per cent should be paid when the work was
completed and accepted. The plaintiffs proceed upon
the idea that change No. 1 and change No. 2 con-
stituted "extra work," or, at least, some of the items
entering into such changes, because costing more
than the bid price for such items, should be treated
as extra work, and accordingly made out their de-
mand against the county, and their complaint rests
upon the same theory. Under the contract extra
work, being work not covered by bid prices or com-
binations of bid prices, was to be done by force ac-
count and remunerated by the county's paying con-
tractors the actual cost of supplies and material,
reasonable rent of special equipment, and costs of
labor and teams, plus fifteen per cent of such cost
of labor and teams.

Change No. 1 departed from the original location
as far as 1,000 feet in one place, and was over a
mile long; change No. 2 was about 3,300 feet long
and on a different alignment than originally laid out
and shown on plans. These two segments constituted,
as we gather, something less than one-half the
length of section 1, but were the more expensive
parts of said section to build. On the unit price
basis, as estimated by the county engineer, the county
owed and paid plaintiffs $106,348.30 for the con-

struction of section 1, which sum was apportioned; thirty-nine per cent to change No. 1, seventeen per cent to change No. 2, and forty-four per cent to the unchanged portion thereof. It will be seen that the so-called alterations or changes cost approximately $60,000 on the unit price basis, and according to force account, as claimed by plaintiffs, it would cost the county about $28,000 more, or nearly $90,000.

It is contended by plaintiffs that change No. 1 and change No. 2 were unreasonable and altered the general character of the contract. The specifications empower the engineer to make changes in quantities, location and extent of the work, and declare such changes, when not unreasonable, shall not invalidate the contract; and by the contract there is reserved to the county—

"the right to make such additions, deductions, or alterations as it deems necessary, making an allowance or deduction therefor at the prices named in the proposal for this work, and this contract shall in no way be invalidated thereby."

These provisions of the contract, looking to alterations of plans and specifications as construction work progressed and as the necessity therefor should arise, are not a new feature to contracts of this kind, but are quite common. Experience has demonstrated that it is impossible to provide in advance, by plans and specifications, for every contingency that may develop in the course of the work, requiring alterations in plans in order to secure the best or most satisfactory results; hence these provisions permitting the owner to order changes without invalidating the contract are usually inserted.

Changes that radically extend the amount of work, or that eliminate large portions of the work, or that greatly increase the cost thereof, are usually not included within the provision allowing alterations

or modifications of the plans or specifications. Generally speaking, only such alterations as are incident to and in aid of the main contract are thought to be covered by these provisions. The rule is well stated in *Cook County* v. *Harms,* 108 Ill. 151, in which it is said:

"We think any material departure from the plans and specifications with reference to which the contract was made, which resulted in a new and substantially different undertaking, cannot be regarded as within the meaning of this language. We think it was only intended to describe and provide against those ordinary and comparatively unimportant departures from the details in the plans and specifications which, during the progress of the work, might become necessary, or at least convenient, to effectually complete the work as it is contemplated by the plans and specifications it should be completed, and which could not, at the date of making the contract, have been certainly anticipated, and therefore provided against."

See, also, *Kieburtz* v. *Seattle,* 84 Wash. 196, 146 Pac. 400; *McMaster* v. *State of New York,* 108 N. Y. 542, 15 N. E. 417; *Shackleford* v. *Campbell,* 110 Ark. 355, Ann. Cas. 1915D, 753 (annotated), 161 S. W. 1019; *Cleveland etc. Ry. Co.* v. *Moore,* 170 Ind. 328, 82 N. E. 52, 84 N. E. 540. We quote from the last case as follows:

"A contract is supposed to have a subject matter, and a provision for changes in plan and location does not authorize radical departures from the work as mapped out in the plans and specifications attached to the contract, but only authorizes such incidental changes as might have been fairly regarded as necessary to complete the work according to the general intendment."

That the departures in this instance were considerable is unquestioned. Change No. 1, according to the county engineer's estimates based on unit bid

price, cost approximately $41,650, and according to plaintiffs' demand, based on cost plus basis, the sum of $22,295 more. Change No. 2 is not so great. The corresponding figures being $18,223 and $3,242. We cannot think the provision in the contract empowering the engineer to alter the quantity, location and extent of work contracted for was intended to extend to changes or alterations so extensive as to increase the contract price in a sum as large as claimed by plaintiffs, especially where the change or alteration consisted in departures from the alignment as radical as the ones we have here. If it be granted that the engineer could leave the original alignment for over a mile in one case, and 3,300 feet in another, we see no reason why he may not adopt greater and longer departures from the original location and greatly augment the contract price to the contractor.

It may be seriously doubted whether even the board of supervisors could order changes or alterations in the location of the roadbed as radical, thereby increasing the cost to the county in so great a sum, unless the price to be paid for such excess was fixed in competitive bids. The board of supervisors' authority to make this contract must be found, if at all, in paragraph 5124 of the Civil Code of 1913. Under this statute the contract must be let to the lowest responsible bidder after thirty days' advertising, or the road construction may be done "under a wage system," by the board of supervisors, "without contract."

This contract, so far as the unit bid price is concerned, conforms with the law, in that it was competitive and upon notice; but we can see no sanction in the law of the cost plus feature of the contract. That is an arbitrary standard of compensation to the contractor for work caused by changes in plans and specifications, and for new or unforeseen items

of work, when they cannot be covered by any of the various items or combination of items for which there is a bid price, and it is inserted in the specifications without competitive bids, but solely on the *ipse dixit* of the county or its engineer. Now, if the engineer, the supervisors, or both, acting together have the power to change the alignment, as it was changed in this case, and thereby constitute the same "extra work" to be paid for at cost plus, they can completely defeat competitive bids. Under such a system one can easily imagine that many contracts might be secured under the form of competitive bids, and the work performed on the cost plus basis, especially where the contract proved unprofitable, or where the cupidity and dishonesty of county officials were called into play.

We agree with plaintiffs that the changes in the alignment of road were material and substantial changes in the contract, which the county could not make without the consent of the plaintiffs. It seems the changes greatly increased the rock excavation, and in one instance to a harder formation than in the original location, compelled the use of pack animals instead of wagons to move excavated material, increased the cost of blasting on account of passing through a settlement of houses, also because of several railroad crossings, and necessitated the removal of material three times in connection with construction at said crossings. Notwithstanding, the plaintiffs without written order, but under protest, constructed the road along the new alignments. They might have refused to do so without violating any obligation of their contract, but, having consented to the changes, even though under protest, the question is: How should they be compensated. It is quite certain that all of the work in the two changes cannot be treated as extra and paid for on the basis of cost

plus, for if that can be done, as we have indicated above, an easy way is provided by which officers, whose powers and duties are carefully defined and restricted, can evade such salutary provisions and restrictions.

In our research we have found no decision passing upon a construction contract providing, as this one does, payment for extra work on the cost plus basis, most, if not all of them, leaving that to be agreed upon by the parties, or perhaps more generally to be fixed by the engineer in charge; and when in such cases litigation has arisen the unit bid price, if there be such, is resorted to in determining the value of such extra work, and work outside the contract, the rule being that deviations or changes in the contract do not necessarily abrogate it, or imply its abandonment. In *Cleveland etc. Ry Co.* v. *Moore, supra,* quoting from the syllabi, it is said:

"Where there is a deviation from the contract by consent of the parties, the general rule is to trace the contract into the extra work in so far as it furnishes a conventional admeasurement of the value which the parties have placed upon the work."

In *Williams* v. *Chicago, S. F. & C. Ry. Co.,* 153 Mo. 487, 54 S. W. 689, it is said:

"Where a contract for the construction of a railroad provides that no extra charges shall be claimed or allowed on account of any change either in line or grade of the road, the prices therein mentioned being a full compensation for the various kinds of work performed, and that nothing shall be deemed extra work that can be measured or estimated under the provisions of the contract, there can be no recovery for a change of line, made by the railroad in good faith, which is capable of being measured under the contract."

One of the provisions of the present contract is:

"Alterations or changes in the plans and specifications, and new or unforeseen items of work, shall be classed as extra work when they cannot be covered by any of the various items or combinations of items for which there is a bid price."

According to this stipulation, alterations or changes, whether reasonable or unreasonable, and whether within the purview of the contract or not, must be paid for upon the unit bid price, if they can be figured out or estimated upon that basis. The rule, both where the job is for a fixed compensation and where done on the unit price basis, is very well put by Mr. Justice FULLERTON, in *Kieburtz* v. *Seattle, supra,* as follows:

"It is undoubtedly a general rule that, where a municipality lets work of a public nature to a contractor to be performed according to specific plans and specifications at a stated price for the completed work, and afterwards radically or materially changes the plan of the work, so as to increase the cost of performance, or orders and directs the contractor to perform work or furnish material not within the contemplation of the original contract, the municipality becomes liable to the contractor for the increased cost of the work, or for the extra cost of the labor or material. The same rule undoubtedly applies to any work or material directed to be performed or furnished not falling within the work contemplated by the contract, where the compensation is not a fixed sum for the completed work, but is a sum to be determined from a fixed price per class unit, multiplied by the number of such units in the completed work. But in a work where the contract price is based on a unit system, we cannot think a right of recovery can be grounded upon a loss caused by reason of the performance of work required by the contract merely because a change in the plans of the work increased the number of units of work of one class and decreased the number in another, especially where, as in the present case, the city

is empowered by the contract to make 'variations in the quantity of the work to be done.' "

The above rule has application to the present contract, because it provides that the quantities of the work may be increased or decreased; the estimates being only approximate. It follows that plaintiffs' theory of treating the two changes described in their complaint, as well as other items, as extra work, to be paid for on the basis of cost plus, is entirely wrong. These could not be extra work, if covered by any of the various items or combination of items for which there is a bid price. A comparison of the items of work called for in the contract with the items of work sued for shows that the latter are covered by unit bid price. Items claimed by plaintiffs in their complaint and demand to be extra work done on change No. 1 were "Solid Rock Excavation," "Common Excavation," "Class B Concrete," "Cement Rubble Masonry," "Dry Rubble Masonry," "Cement Rubble Masonry Headwalls," etc., nine items all told. And looking to plaintiffs' proposal abstracted in the early part of this opinion, it is seen that each and every one of these items the plaintiffs agreed to do upon a unit price basis. In change No. 2 the items charged as extra work are "Solid Rock Excavation," "Common Excavation," and "Drainage and Structure Excavation," all of which are covered in the proposal upon a unit price basis.

The plaintiffs in stating their cause of action seek to avoid the requirement of the contract that extra work be by written order of the engineer before the same may be charged for as extra work, by alleging that they demanded such written order before beginning the work on changes Nos. 1 and 2, which was wrongfully and capriciously refused. Under the contract, all alterations should have been

by written orders, but whether an alteration be extra work or not is determined by the method of ascertaining its cost, and not by the manner in which it is directed to be done. If the unit bid price furnish the formula to fix the cost, it is not extra work; otherwise it is.

The cost plus basis of compensation for extra work under the contract, if ever, or at all, available, is not so in this case, for the very good reason that there was no agreement in writing between the engineer and contractors as to the reasonable rental charge for special equipment used in the work, nor was there any agreement as to the current price of labor and teams, as the contract provided there should be. In the absence of such agreements, whatever the cause, the recovery for extra work would necessarily be the reasonable value thereof as for labor rendered and material furnished.

The points discussed above were raised by demurrers in defendants' answer and are assigned and argued in defendants' brief. Because of the view we have taken of the law questions involved, we find it unnecessary to wade through the 776 pages of the abstract further than the pleadings. We have read and considered the briefs of the parties, covering 418 pages of arguments and authorities, both instructive and helpful. The writer hereof has worried and struggled long and hard with this mass of printed matter, and if the right solution has not been reached it is because of his inability to master so involved a situation and not for lack of industry or sincerity of purpose. If we had made our opinion as broad as the invitation and had taken up and considered every point brought out by the seventy-four assignments of error, and the replies thereto, it would have extended the opinion far beyond reason and served no useful purpose.

We think the facts disclosed by the complaint, that is, the contract, consisting of the specifications, proposals, plans, maps, profiles and the written demand against the county, together with accompanying allegations, show, if anything, a cause of action on *quantum meruit* and *quantum valebat,* and not upon contract. *Tribble* v. *Yakima Valley Transp. Co.,* 100 Wash. 589, 171 Pac. 544. Indeed, the plaintiffs' theory that the items sued for should be classed as extra work is based upon the idea, as we understand it, that they are outside the terms of the contract, and yet they would have them paid for on the basis of cost plus provided by the contract. We are satisfied this cannot be done. The demurrers, for the reasons set forth, should have been sustained.

The judgment is reversed and the cause remanded, with directions that the demurrers be sustained and that such further proceedings be had as are not inconsistent herewith.

McALISTER, C. J., and LYMAN, J., concur.