### SNOWBALL v. MANEY BROS. & CO.

(No. 1484; September 11, 1928; 270 Pac. 167)

(Rehearing denied Nov. 21, 1928)

86

*George W. Ferguson* and *E. L. Fulton,* for appellant.

*P. W. Spaulding,* for respondent.

*George W. Ferguson* and *E. L. Fulton,* in reply.

BLUME, Chief Justice.

The petition in this case alleges that the plaintiff and defendant entered into a written contract on March 31, 1925, for the construction of a portion of a public highway in Uinta County, Wyoming, known as Federal Aid Project No. 173 A, namely, between stations 1245 and 1341 thereof, the plaintiff to be paid upon the basis of unit prices for the work to be done; that this written contract was made as a subcontract under a written main contract between the defendant and the State of Wyoming; that plaintiff commenced work on April 6, 1925, and performed a certain portion under his contract and was ready and willing to perform the remainder, but that the defendant on April 29, 1925, wrongfully and without cause and without the consent of the plaintiff discontinued the work under his contract and refused to permit plaintiff to proceed therewith to the plaintiff's damage in the sum of $2700 and the further sum of $263.70 for work which he did under the contract but for which payment had not been made. A copy of the contract between plaintiff and defendant was attached to the petition as a part thereof. It provided the unit prices for the various kinds of work; that payments should be made to plaintiff according to monthly estimates made by the state's engineer in charge, 15% thereof to be retained temporarily; that plaintiff would at all times comply with the orders of such engineer; that such engineer should be the umpire to interpret the plans and specifications and to fix the quantity of work done by plaintiff, including extra work and work for which no price was named and that his determination of such quantities and amounts should be final and that the plans and specifications made by the state for the work should be a part of the contract. The portion of the specifications which are particularly discussed in the case reads as follows:

"The state highway engineer shall possess the right to make reasonable changes in the plans or character of the work, when in his judgment they may be desirable, but

such changes shall not serve to increase the cost of the work to the contractor unless he receives suitable compensation therefor. All orders regarding changes in the plans or specifications must be in writing and signed by the state highway engineer. After the work is performed, no claims for extra allowances, on account of alterations in the plans or specifications will be considered unless supported by a written supplementary order as provided above.''

The defendant answered, admitting the execution of the contract between him and plaintiff, and denying that the same was breached. The answer sets forth the right of the state engineer to make changes in the plans and specifications of the work; that plaintiff agreed thereto; that a change was made in the plans by somewhat changing the line of the highway; that plaintiff was stopped for some days by the state's engineer in charge till such changes could be made, but that he thereafter proceeded with the work under the plans as changed; that he acquiesced therein and is estopped from claiming that his contract with defendant was discontinued. To this answer a reply was filed, and the case proceeded upon the issues so joined. The evidence disclosed that the line of the road was changed between certain stations thereon. The changed line for about half of the distance undertaken to be constructed by the plaintiff varied some thirty or thirty-five feet from the original line and was lower down on a hill side; from that point the variation became greater until it amounted to about a mile and a half. Considerable testimony was introduced as to whether the work performed by plaintiff was more burdensome than the work along the original line would have been; plaintiff's witnesses testified that it was, though they gave few, if any, details. The testimony on behalf of the defendant showed that, on the whole, no additional burden was placed on the plaintiff by reason of the change. It further appears that the state's engineer in charge stopped plaintiff's work on April 29, 1925; that the latter was idle for about eight or nine days; that plaintiff claimed compensation for this enforced idleness and that

on December 4, 1925, the state paid him the sum of $919.60 therefor. At the end of the eight or nine days above mentioned, the state's engineer told plaintiff he could go to work again, which he did, and payments were thereafter made and accepted till the completion of the work, upon estimates made in accordance with the written contract between plaintiff and defendant. The testimony of defendant showed that plaintiff made no protest against the change and that he acquiesced therein. Inasmuch as plaintiff's testimony on that point is of some importance, it will be given in some detail. He stated:

"A. Mr. Turner came to me and told me not to fetch my outfit out the next morning. I went to see Mr. Maney about it. I spoke to him about it and he says that I couldn't do anything; that I would have to follow Turner's instructions, and to do whatever he told me to do. I asked him what they were doing and what about it, and what they were going to do, and he says they were changing the road, and I asked him what I was going to do, and he says 'you will have to do whatever the engineer tells you.' Q. What did you say to Mr. Turner? Did you say 'all right, I'll do what you say?' A. Certainly. That's the only thing I could do. Q. Now you say that Mr. Turner told you he would put you onto work again on a new project. You say that is what he told you. A. Yes, sir. Q. And what did you say to Mr. Turner? A. I told him I was ready to go to work, and I was. * * * I was up against a bad problem and I had to go to work. * * * Mr. Maney left the country after that first conversation. * * * I used to talk to him (Mr. Young, after he became foreman) about the hard project on the road, and how bad it was to do that changed road. We used to talk every day about it, when he would come down, but it was always in the line that it was a tough proposition."

Plaintiff further testified to a conversation which he had with Mr. Westfall who previously had been, but was not then the superintendent of the defendant, his place having been taken by Mr. Young. This conversation was about

June 20th, some five or six weeks after plaintiff had started to work on the changed road. His testimony was:

"After I got my first estimate it didn't look right, and I went down to see Mr. Westfall, and told him this was a tough job and I wouldn't be able to stay and 'I believe I'll blow up.' These were the words I used, and he says 'you stay and we will see that everything is made right. Mr. Maney hasn't come to any agreement with the state yet over this road, but we will make things right.' He says 'I know we will make things right. You go ahead and I will do anything to help you I can, but you will have to get them the way you have been getting them, until some contract is made.'"

The defendant moved for a directed verdict when the plaintiff rested, and again when the testimony was all in. These motions were denied, the jury was instructed along the line of plaintiff's theory of the case, and it returned a verdict in favor of the plaintiff for $2519.87, namely, $253.87 for work done but not paid for, and $2266 for profits for breach of the contract sued on. Judgment was entered upon the verdict and the defendant appeals. The parties will generally be referred to herein as in the court below.

1. One of the items for which recovery was sought, and which was allowed by the jury, was an item of $253.60 for 15 per cent temporarily retained under the estimate of the work done before the line of the road was changed. The plaintiff testified that this item was not paid. This testimony stands uncontradicted in the record. Whether the item was overlooked by the defendant in view of the fact that it was but a minor portion of the claim sued on, we do not know. But it is apparent that we cannot disturb the verdict of the jury on that item. And counsel for the plaintiff argue that inasmuch as defendant has appealed from the whole judgment, and part of the judgment is right, the whole of it must be upheld. They cite no authority to sustain such position, and this contention must be over-

ruled. We have often upheld a part of a judgment and reversed a part, in cases in which an appeal was taken from the whole judgment.

2. Plaintiff herein stands upon the original contract, sues for the breach thereof and seeks to recover the profits which he would have made had the line of the road not been changed, that is to say, his profits if he had been permitted to do the work along the line of the road as originally laid out. Counsel's theory is that the fact that plaintiff constructed the road between the stations mentioned in his contract according to the changed plans has nothing to do with the case; that he did this work under an implied contract which was not a substitute for the contract in writing, because plaintiff never agreed to any such substitution; that when material alterations were made in the plans by which the expense of constructing the road along the new line was made, the original contract was breached, for which he is entitled to recover his damages. Counsel for plaintiff seem to rely to a considerable extent upon the fact that the specification governing the work herein required any alterations and changes to be in writing and the fact that this requirement was not complied with. Counsel seem to have overlooked the purpose of such a provision. The court in Michaud v. MacGregor, 61 Minn. 198, 63 N. W. 479, speaking of provisions of that character, said:

"The legal effect of provisions of this kind in building contracts is to prevent the contractor from recovering payment upon an implied promise for extras, in excess of the contract price, by simply showing that they were not included in the original contract, but were necessary for the completion of the building, and that he furnished them. He must go further in his proof, and show that the provision has been directly or indirectly waived by a subsequent valid contract, or by such conduct on the part of the owner of the building as equitably estops him from insisting on the provision, for it is binding on the parties, unless such facts are alleged and proved as relieve them from the obligation."

In other words, the purpose of such provision seems to be to protect the owner of property against any unwarranted claims of the contractor. Such a provision may be waived, or modified by oral contract. 9 C. J. 718; Wood v. Fort Wayne, 119 U. S. 312, 7 Sup. Ct. 219, 30 L. Ed. 416, and lengthy note 48 L. R. A. N. S. 574 et seq. It has always been appealed to by the owner, not the contractor, so far as we are able to learn. But, of course, if the owner of property who causes certain work to be done may waive it, the contractor, or subcontractor, may do likewise. We do not think that the point has any bearing in the case at bar. Counsel further cite us to cases mentioned in note to 15 A. L. R. 751 et seq. which indicate that where a man makes a contract with another which does not necessarily require personal services, the contractor need not, on breach of the contract, minimize the damages by seeking other employment. We fail to see the application of such cases. In none of them was the contract actually performed either in its original or changed form as in the case at bar. Counsel for plaintiff further rely upon the rule mentioned in Greenlee County v. Webster, 25 Ariz. 183, 215 Pac. 161, 164, and cases there cited to the effect that notwithstanding the fact that a contract provides for alterations, as in the case at bar, material departures from the plans and specifications with reference to which a contract is made, which result in a new and substantially different undertaking cannot be regarded as within the meaning of the provisions for such changes; that such provisions are intended only to describe and provide against those ordinary and comparatively unimportant departures from the details of the plans and specifications which, during the progress of the work, might become necessary. But these cases are no authority that the plaintiff herein, after proceeding with the work as he did in this case, is entitled to the measure of damages which he seeks to recover herein. Some of the cases hold that the contractor who proceeds to do the extra amount of work which he was required to do under the changed plans may,

at least when additional work was done under protest and under claim for additional compensation (see Borough Const. Co. v. New York, 200 N. Y. 149, 93 N. E. 480, 140 A. S. R. 633; Charles Meak & Co. v. New York, 181 N. Y. S. 704; Williams v. Ry. Co., 153 Mo. 487, 500, 509, 54 S. W. 689), recover upon a *quantum meruit*, provided that the written contract contains no provisions by which the new work may be measured. We have not found a single case, and counsel have cited none, where any recovery like that claimed herein has been allowed. The very case, Greenlee County v. Webster, supra, upon which counsel greatly rely, has not been read aright by them, for it is against them. The case involved a contract for road construction, and a change of line therein, as in the case at bar. Plaintiff did not seek to recover profits which he might have made had no such change been made, but for the value of additional work required along the new line under a provision of the contract which provided that where no other provision of the contract applied, plaintiff should be entitled to the cost of such additional work plus a certain per centage. The court held that under the circumstances of the case this provision could not be applied, the conditions making it applicable not having arisen; that, further, under the contract, alterations or changes must be paid for upon the unit bid price, if they could be figured out or estimated upon that basis; but that the plaintiff claiming that they could not be so figured, he had at most, if he had any remedy at all, one upon a *quantum meruit*. The court said in part as follows, which is very significant here:

"Notwithstanding the plaintiffs, without written order but under protest, constructed the road along the new alignments. They might have refused to do so without violating any obligation of their contract, but having consented to the changes, even though under protest, the question is: How should they be compensated? * * * when in such cases litigation has arisen the unit bid price, if there be such, is resorted to in determining the value of such extra

work, and work outside the contract, the rule being that deviations or changes in the contract do not necessarily abrogate it or imply its abandonment.''

Assuming the rule relied on to be correct that material alterations are not within the contemplation of provisions for changes, it should not, in any event, operate one-sidedly, although it has seemingly heretofore been applied only in suits by contractors for compensation in addition to that provided for in a written contract. The point of importance is the materiality of the change, not whether the change is in favor of the contractor or in favor of the builder. Now suppose the change in the case at bar had been favorable to the plaintiff in this case, and that he had made a profit of $10,000 on the work which he actually performed. Would it still be contended that he is nevertheless entitled to the profits which he would have made on the work along the original line of the road? It would seem that counsel are driven to answer that question in the affirmative, if the rule mentioned controls this case. And such affirmative answer would, we think, show the fallacy of counsel's theory. Further than that, it is clear that if the plaintiff had specifically agreed in writing to construct the road in question between stations 1245 and 1341 according to the new plans, upon the terms and conditions under which he in fact constructed it, he would have been barred from suing for the breach of the original contract, since the subject matter of the two written contracts, namely, the construction of the road between these stations on Federal Aid Project No. 173 A would have been essentially the same notwithstanding the alterations. The cases are decisive on that point. Howard v. R. R. Co., 1 Gill (Md.) 311, involved a construction contract for a road. After part of the work had been performed under the original contract, the company insisted upon cancelling the contract and entering into a new one. Such new one was entered into, under protest, that contract being materially different

from the first in that it embraced only part of the work that was covered by the original one. The court said:

"Where the original contract is rescinded by the parties, after it has been partially performed, either by the waiver of the performance of the balance of the contract, or entering into a new one so inconsistent with the first as to be wholly irreconcilable in such case a recovery may be had for the part performance on a general count, but not by declaring on the contract itself."

In McCabe Const. Co. v. Utah Const. Co., 199 Fed. 976, in which, too, a second written contract was entered into, the syllabus is as follows:

"A party to a contract which, on being notified by the other party that it would not perform, yielded to the demand of the other and voluntarily, although under protest, entered into a new contract covering the same subject matter, which was performed by both parties, cannot maintain an action for breach of the first contract, which was necessarily superseded."

In the case of International Cement Co. v. Lamont, 155 U. S. 303, 310, 15 Sup. Ct. 97, 39 L. Ed. 160, it was said of such a situation:

"He (plaintiff) entered of his own accord into the second contract and has acted under it, and has taken advantages which resulted from his action under it, having received the compensation which was to be paid under its terms.   Having done all this, he is estopped from denying the validity of the contract.   *   *   *   Nor does the fact that in making his second contract the relator protested that he had rights under the first better his position.   If he had any such rights, and desired to maintain them, he should have abstained from putting himself in a poistion where he voluntarily took advantage of the second opportunity to secure the work.   A party cannot avoid the legal consequences of his acts by protesting, at the time he does them, that he does not intend to subject himself to such consequences."

See also Consumer's Cotton Oil Co. v. Ashburn, (C. C. A.) 81 Fed. 331; Lawall v. Rader, 24 Pa. 283; Krebs Hop Co. v. Livesley, 59 Or. 574, 114 Pac. 944, 118 Pac. 165; Williston on Contracts, Sec. 1826. There is no sound reason that we know of why the rule should not be applied when the second contract is oral or implied and is clearly shown, as well as when it is in writing, for even a written contract may always be changed, modified or waived in whole or in part by a subsequent one, express or implied. Williston, supra, Sec. 1828; 6 R. C. L. 915; 9 C. J. 717. If the contention of plaintiff, accordingly, were sound (which we do not think is true, as hereafter more fully shown), that he did not construct the road in question, after the alterations, in accordance with the written contract, then he performed it under an implied contract entirely inconsistent with the written one and therefor taking its place, for it covered substantially the same subject matter and the detailed terms and conditions under which the work was done.

We do not think that there were two contracts in the case at bar, but that all the work by the plaintiff was done under the written contract. A man cannot blow both hot and cold. He cannot treat a contract in force and effect and then sue for its breach, upon the theory that it was repudiated by the opposite party. If he acts on the theory that it is still in force, the breach, if any, is waived. In re Hook, (D. C.) 25 Fed. (2d) 498; Maund Mines Co. v. Hawthorne, (C. C. A.) 173 Fed. 882; Sternberg Dredging Co. v. Bondurant's Ex'r., 223 Ky. 668, 4 S. W. (2d) 687; Forbes v. Appleyard, 181 Mass. 354, 63 N. E. 894. The court in the last cited case said of a situation similar to that in the case at bar:

"Furthermore the plaintiff is met by the further difficulty that he did not treat the contract as wrongfully ended by the defendant's course. The moment for him to treat the contract as repudiated, if ever, was on November 1, when he knew the defendant's position and answered him. But the plaintiff went on and did further work."

Page on Contracts (2nd Ed.) Section 3038, says:

''As applied to problems of breach, in cases in which the party who is not in default has the right of election between treating the breach on the part of the party who is in default as a discharge of the contract, or treating the contract as in full force and effect, the party who is not in default may, if he elects to do so, take the latter alternative and treat the contract as in effect. Such election waives the right of the party who is not in default to treat the contract as discharged by the breach which such party has thus waived.''

And again in Section 3060, the same author says:

''Election on the part of the party who is not in default, to treat the contract as in effect, operates as a waiver of his right to treat it as discharged for the same breach. * * * If the party who is not in default elects to act under the contract in spite of the breach, he cannot prevent the party who is in default from treating the contract as the measure of the rights of the party.''

And while there must be an intent to waive, such intent need not be shown by direct evidence (40 Cyc. 267); and if such intention appears to exist so as to mislead the adverse party, it works an estoppel. Page, supra, Sec. 3042.

These principles, in so far as applicable to the case at bar, are illustrated by the cases which we shall now proceed to discuss. This court has already clearly laid down what the rule should be as to the continued existence of a written contract which provides for alterations, when the work under the contract as altered has been carried out. Hood v. Smiley, 5 Wyo. 70, 36 Pac. 856. That case involved a contract for a building. Changes were made in the plans and specifications and the building was erected in accordance therewith. The contractor claimed that the original, written, contract was abandoned, and he sued upon *quantum meruit*. This court said:

"The plaintiff in his reply admitted the making of the contract, and upon the trial introduced in evidence the plans of the house he had agreed to erect. Under such circumstances the presumption is that the contract continued until something to the contrary was shown. It is the common experience of men that changes and alterations in the original plans and specifications of buildings are the rule, and not the exception, and the legal rule seems to be well established, as stated by counsel for plaintiff in error: 'that where additions are ordered to be made and are made to a building, which a workman has contracted to furnish for a certain sum, the original contract is held to exist as far as it can be traced to have been followed, and the excess must be paid for according to its reasonable value.'

"And it is only where the alterations and changes are so great that it is impossible to follow the original contract, that it will be deemed to have been wholly abandoned, so that the contractor can recover upon a *quantum meruit*. So long as it can be traced, it is binding upon both of the parties, and when once shown to have existed the burden is upon the party who claims its abandonment, and thereby seeks to lay down another measure of the value of the work than that agreed upon by both parties to the contract."

See also Warren v. Goodrich, 133 Va. 366, 112 S. E. 687; 6 R. C. L. 914; 9 C. J. 722.

In the Wyoming case the contractor claimed abandonment on the part of both. In the case at bar the plaintiff claims abandonment, i. e., repudiation, only on the part of Maney Bros. But the principle of law involved cannot be any different in the two cases. The underlying facts are the same, and the principle of law cannot be made any different by reason of the mere claim now made by the plaintiff, when his conduct led the other party to believe the contrary. The facts, not what he now claims, must control. See Page, supra, Sec. 3042.

A case strikingly in point, and we think decisive herein, is McGrann v. R. R. Co., 29 Pa. St. 82. That case involved a contract for the construction of a railroad, the line of which was materially changed except as to the termini. The suit was on *quantum meruit* and it was con-

tended that the change in the line was so material as to amount to a new road. The court said in part:

"When the change was made in the line of the road, if the contractors wished to abandon the contract, it was their duty to give notice to the company to this effect, but they did, not—they proceeded with the work without asking a new contract. Occasionally they complained 'that they could not do the work for these prices;' and one member of the firm 'did not wish to go on,' etc. Complaints on the part of contractors that they are losing, seldom create surprise, for it is not often they boast to an engineer that they are making money. One thing is certain, no new contract was made, and the evidence is much more conclusive that the work proceeded under the *written,* than under an implied contract. The agreement stipulated not only the prices to be paid for the different kinds of work, but that 'no claim should be allowed for extra work, unless the same was done in pursuance of a written order from the engineer in charge, and the claim made at the first settlement after the work was executed; unless the chief engineer, at his discretion, should direct the claim, or such part of it as he might deem just and equitable, to be allowed.' No such written order was ever made. The engineer says, 'when I affixed these prices I never heard the contractors object to them.' The monthly estimates were paid and receipted for by R. McGrann & Co. 'according to contract.' The retained per centage, to secure the completion of the work, was deducted from each estimate, says the engineer, 'because it was mentioned in the contract.' He says further, 'none of the contractors then insisted on having more than 68 cents (the contract price)—they never gave me notice as engineer that they would not go on at 68 cents. At the time the change was made in the location, the contractors did not say they would throw up the contract."

"In Shaw v. The Turnpike, 3 Penna Rep. 445, it was held that 'a party treating a contract as subsisting, waives the consequences of a previous default, and cannot afterwards avail himself thereof to recover a *quantum meruit* for work done in pursuance of a contract under seal.' And it may be said in the present, as in that case, that if the company put it in the power of the contractors by reason of any default to dispense with the contract, it was their business either to take advantage of the same by declaring it at an

end, or to waive the consequences by treating it as still subsisting. In Lawrence v. Dale, 3 John. Chan. 23, it was held that, 'where one party intends to abandon or rescind a contract on the ground of a violation of it by the other, he must do so promptly and decidedly on the first information of such breach. If he negotiates with the party, after the knowledge of the breach, and permits him to proceed in the work, it is a waiver of his right to rescind the contract.' And this principle is fully carried out and maintained by Justice Cowen in Merrill v. Ithaca Railroad Company, 16 Wend. 588; in McCombs v. McKennan, 2 W. & S. 216, and other cases. The contract is therefore not to be considered as rescinded or abandoned.''

In the case of Merrill et al. v. R. R. Co., 16 Wend. 588, 30 Am. Dec. 130, also involving a construction contract, the contractors claimed that by reason of the fact that they were prevented by the railroad company from completing the work within the time specified in the contract, they were not bound by the terms thereof, after that time. They performed the work, however, after the time mentioned and received payments according to the estimates of the engineer in charge just as they had previously. Thereafter they sued upon *quantum meruit* for the work performed after the expiration of the time mentioned in the contract. The court said in part:

''After such an exact tacit adherence, on the side of the plaintiffs, as appears from the evidence in this case, to the written terms of the contracts, without one word that they intended to alter their rates of charge, it would be a fraud upon the company were they allowed to change their ground. * * * It would be gross injustice to allow any substantial departure from stipulations, in reference to which the parties all along acted. No matter for the delay, and no matter which party was so unfortunate as to be the innocent occasion of it. It was the business of either to speak out, if a change of terms was in contemplation. Silence was equivalent to saying, 'I go on upon the old terms.' It is like a tenant holding over in silence. He shall pay his last year's rent. If one party, by his conduct or silence, leads another to believe that he is at work for

him on *certain wages,* he is estopped and shall not add to his demand.''

In the case of Hawkins v. United States, 12 Court of Claims 181, very material alterations in the requirements of the work of a building were made by the assistant superintendent. Payments were made to the contractor upon the basis of a written contract to which no objections were offered. Subsequently the contractor sued to recover additional money for the increased cost of construction caused by the changes. The court said in part:

''This was a clear departure from the terms of the contract, and the claimant might then have declined to follow the directions of the assistant superintendent; and, if they were persisted in, he might have maintained an action against the defendants for breach of contract in preventing him from going on with his work, or he might have notified the defendants that if he furnished such stone as the assistant superintendent required—a stone materially different and more expensive than that called for by his agreement—he should not deliver it under the contract at contract-price, but should claim such compensation as the material was worth. Had he thus promptly notified the defendants, they would have had an opportunity to determine whether they would overrule the directions of the assistant superintendent or would go on according to his wishes and construct a more expensive wall than had been contemplated. But this opportunity was lost to them by the claimant's ready submission to the wishes of the assistant superintendent and by his long silence as to any claim for greater compensation. It was his duty, when he was requested to deliver stone of a higher grade and more expensive kind than that contracted for, before he had delivered any such stone and before the defendants had acted upon the change, to have given notice and asserted his intention to demand a higher price therefor. He could not lie by and allow the defendants to go on upon the supposition on their part that they were incurring no extra expense until it was too late for them to recede, and then successfully spring upon them a claim for other and different and greater compensation than had been agreed upon.''

In the case of Davis v. Bush, 28 Mich. 432, an owner of property was led to believe that a building was being erected for him by a contractor for a specified sum. The contractor sued upon *quantum meruit*. The court said among other things:

"Was it admissible for the defendants in error after such declaration and admission, and after such payments and receipts upon the basis of it, to shift their ground and take an inconsistent position? Were they at liberty to say that having got all they could by putting one face upon the transaction, they would then repudiate as one no longer of service to them the status they had thus admitted, and put forward another and inconsistent position and relation in order to get more?

"Unless we depart from settled principles, these questions must be answered in the negative, even though we should feel that defendants in error would have been warranted in steadily standing out from the beginning for a different measure of compensation. If they meant eventually to contend that their true contract relation with plaintiff in error was one giving them the right to require him to pay according to the standard of market value because no price was settled upon, they should have acted, in dealing with him about the rate and in receiving pay, consistently with that construction of the transaction, or at least they should have avoided the contradictory and misleading course which was taken."

These cases were reviewed by the Supreme Court of Indiana in the case of Cleveland etc. Ry. Co. v. Moore, Receiver, 170 Ind. 328, 82 N. E. 52, 84 N. E. 540, and the same conclusion was reached as in the cases heretofore cited. These cases, it is true, held the written contract involved therein in effect as against an implied contract; that is to say, the contractor was not permitted to recover on a *quantum meruit*, but the reasoning of the cases applies equally to the situation in the case at bar. The gist of the decisions is that the written contract remained in force and effect and that it was not breached; and if it was not breached so as to permit recovery on a *quantum meruit*, it would be no

more breached so as to permit a recovery for anticipated profits as sought in the case at bar. The plaintiff herein accepted the alterations made in the contract just as effectually as Maney Bros. Estimates were made, and payments were made to plaintiff upon the basis of the written contract. He accepted these payments without demurring. On December 4, 1925, plaintiff received $919.60 for loss of time during the period that alterations in the plans were made. Counsel for plaintiff do not seem to think this of importance. But it is. If the written contract herein was breached, it was breached on April 29, 1925, when plaintiff was directed to quit temporarily. If he wanted to recover for the breach of the contract, the damages were to be measured as of that day, and he could not have recovered additional amounts for loss of time during the very time which he would have been compelled to consume to make the profits, had he been permitted to go on. Hence, if we permitted the judgment to stand, plaintiff would have the $919.60 as a gratuity. The facts are, this claim of plaintiff but shows that he considered that during the time in which he did not work, he was waiting to continue his work under the written contract. His whole course of conduct conclusively shows that he acquiesced in the changes. In fact, it is very clear from the testimony that up to about June 20, 1925, some five or six weeks after he had commenced work on the road along the new line, he did not even expect to make any objection. Nor did he, so far as the testimony discloses, make any objection thereafter, except that he wanted compensation for the loss of time while the changes were being made, and he received this compensation. On June 20, 1925, it is true, he spoke to one Westfall, and he indicates in his testimony that the latter promised him some additional money. But it is not shown what Westfall's connection with defendant was at that time or that he had any authority whatever to make any promises on behalf of defendant. The testimony before us indicates that he had none. It does not even appear that the conversation with

Westfall came to defendant's knowledge. Defendant did not make the changes. They were made by the state, and the defendant and the plaintiff alike had agreed in their contracts to obey the orders of the engineer in charge for the state. We can see no justice in forcing the defendant between an upper and a nether millstone. It is not necessary in this case to go as far as some of the cited cases seem to have gone. We need go no further than to hold that the plaintiff acquiesced in the changed contract and that he was bound thereby; that his work was done thereunder and that he cannot claim anticipated profits as for the breach of the contract.

In view of this holding it is not necessary to consider the various assignments of error herein separately. The rulings on the motions for a directed verdict were right only because of the item of $253.60 heretofore mentioned. But the instructions to the jury were erroneous. They were nearly all based on the theory that the plaintiff could recover for anticipated profits as for a breach of the contract, if material alterations were made. The theory was entirely erroneous and in no event can the plaintiff, under the facts shown in this case, recover for the anticipated profits sued for herein.

The judgment of the court as to the item of $2266 is accordingly reversed; but the judgment as to $253.60 is permitted to stand. The case is accordingly remanded with directions to modify the judgment herein by reducing it to $253.60 as of the date thereof. Costs in this court will be taxed in favor of appellant.

*Reversed in part; Affirmed in part; Remanded with Directions.*

KIMBALL and RINER, JJ., concur.

ON PETITION FOR REHEARING

BLUME, Chief Justice.

The original opinion herein is long and exhaustive, and we had thought that our reasoning, supported by numerous authorities, might even convince counsel for the respondents that we could not have come to any other conclusion than we did. We were wrong in so thinking, and a petition for a rehearing has been filed herein. We may, however, at least say to counsel that the case received a most thorough consideration at the hands of the court and that a most searching examination of the authorities was made. Counsel for the respondent thinks that some of the statements as to the facts are erroneous. By re-checking we find that this objection seems not to be well taken, and we think that the opinion fairly states the facts.

The main complaint herein on the part of the petitioner for a rehearing seems to be that we entered a final judgment herein, instead of sending the case back for a new trial. A motion was made during the trial of the case for a directed verdict. In such case at least, this court has the right to order and direct judgment for the party in whose favor the judgment should have been directed. Section 5897, Wyo. C. S. 1920. As indicated in the original opinion, it may be that technically speaking the provisions of that section do not apply in this case. But a judgment or final order may be reversed, vacated or modified by this court as provided by Section 6371, Wyo. C. S. 1920, and the right to do so in a civil case has not been disputed in this court for at least many years. The right exists even in a criminal case. State v. Sorrentino, 31 Wyo. 499, 228 Pac. 283, 36 Wyo. 111, 253 Pac. 14. The point decided herein—aside from the minor claim involved in the suit—was that the plaintiff was not entitled to recover anticipated profits of the contract involved in the suit as for the breach thereof, because the contract was not breached, at least in the sense so as to allow the recovery of such profits, for the reason that plaintiff went ahead with it. Even though he

may have done so under protest, because of the changes and alterations, still he went ahead with it, and that effectually prevented him from claiming the contract as ended. We can conceive of no further evidence that might be produced in this case that could possibly change our conclusion under the undisputed facts. Counsel have not indicated how a different result might be reached. He again cites Borough etc. v. New York, 200 N. Y. 149, but as already shown in the original opinion, this and like cases have no application whatever in the case at bar. Counsel still insists upon the correctness of the theory on which this case was tried. He has not intimated that it might be re-tried upon some other theory which would alter the situation, and it would accordingly be wholly useless to do anything but enter a final judgment herein.

*Rehearing Denied.*

KIMBALL and RINER, JJ., concur.