## MERRILL–STEVENS DRY DOCK & RE-PAIR CO. v. UNITED STATES.
### No. 47734.

United States Court of Claims.
Decided April 3, 1951.

Robert V. Smith, Washington, D. C., Robert P. Smith, Joseph W. Kiernan and Smith, Ristig & Smith, all of Washington, D. C., on the briefs, for plaintiff.

Grover C. Sherrod, Washington, D. C., Newell A. Clapp, acting Asst. Atty. Gen., for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

JONES, Chief Judge.

By contract dated September 17, 1942, plaintiff undertook to fabricate for the Charleston Navy Yard bow and stern sections for 43 destroyer-escort vessels. The contract was negotiated; there was no competitive bidding. It was a fixed-price contract providing for payment at a unit price of 9 cents per pound for the finished product. The contract recited an estimated total weight of 9,000,000 pounds, more or less, or about 209,300 pounds, or 105 tons, for each bow and stern section.

Difficulties and delays were encountered from the beginning. The defendant failed in its obligation to supply promptly the necessary plans, templates, and steel plates. Plaintiff had difficulty in obtaining welding rods with the priorities furnished. Furthermore, 9 cents per pound turned out to be too low a price for this work. By April 1, 1943, when bow and stern sections for 15 ships were due for delivery under the contract, only 9.05 sections had been completed. And each section was found to weigh, not 209,300 pounds, but 154,040 pounds, or about 77 tons. Due to the inadequacy of the bid and other causes, including the abnormal costs occasioned by defendant's delays, plaintiff's costs had by the end of March 1943 so far exceeded payments to it that its financial position had become precarious and it was faced with immediate bankruptcy if it attempted to continue under the contract as drawn.

At this point the contract was amended, the balance of the work being placed on a basis of cost plus a bonus if plaintiff were able to complete it at less than the estimated cost.

For the period before the amendment of the contract on March 31, 1943, plaintiff's costs exceeded its receipts by $281,625.15. Upon the basis of the evidence in the record a reasonable allocation of this loss can be made as follows:

Due to plaintiff's inadequate bid of 9 cents per pound ........ $146,657.25
Excessive costs due to Government's delays .............. 40,066.41
Proportion of normal high initial costs allocable to production under supplemental contract ..................... 94,901.49

281,625.15

There are appealing elements in plaintiff's plight. The destroyer escort was a new type of vessel at the time. The agreed price for doing the work was certainly too low; many difficulties and delays were encountered. It soon became apparent that plaintiff could not complete the work on the basis of the original contract. But the contract had been signed and it was specific in its terms. The rate of 9 cents per pound had been agreed to. Plaintiff had unconditionally obligated itself to do the work on these terms. Plaintiff contends, however, that it entered into this contract in reliance on misleading statements by defendant's agent that 9 cents was an adequate price and that each bow and stern section would weigh about 100 tons. It is plaintiff's position that these were misrepresentations for which defendant is answerable in damages in this action. Plaintiff further contends that defendant is liable for its delays in furnishing and delivering plans, templates, material, and priorities.

With respect to the representations as to weight, defendant contends that the fact is that its agent estimated to plaintiff's officers a weight of only 66 tons and that therefore plaintiff was not damaged by the fact that, as matters turned out, each bow and stern section actually weighed about 77 tons. To sustain its contention that an oral estimate of 66 tons was made, defendant points to typewritten transcriptions of mechanically recorded telephone conversations which its agent had with officers of plaintiff. The recordings were made without the knowledge of plaintiff's officials who were parties to the conversations and ad-

mittedly some corrections, at least in language, were made in the copies transcribed by typewriter. Plaintiff contends that consideration of these documents as evidence is prohibited by Section 605 of the Federal Communications Act, 48 Stat. 1064, 1103, 47 U.S.C.A. § 605. Defendant relies also on its agent's testimony on the stand, which, however, was contradicted by the testimony of plaintiff's witnesses.

The evidence does establish that plaintiff was told that 9 cents per pound was a fair and adequate price for this work and that its higher bids would not be acceptable. Plaintiff contends that this assurance that 9 cents was a fair and adequate price was also an actionable, even if innocent, misrepresentation.

Whether it was such rather than merely a permissible statement of opinion; whether there is a preponderance of legal evidence establishing as a fact that there were misrepresentations as to weight; whether some or all of the Government's delays were in breach of the contract; and whether these statements and delays resulted in damage are questions that we do not decide. For we are of the opinion that whatever causes of action might have arisen on this contract prior to March 31, 1943, did not survive its amendment as of that date.

■ The original contract was amended following conferences in Washington in late March 1943. Plaintiff's representatives came to Washington and placed the entire situation before the Naval authorities with a view to obtaining relief. By this time the situation had become intolerable for both parties. Plaintiff faced the immediate prospect of being forced out of business by this losing contract. Defendant saw its important destroyer escort building program threatened. The problem was discussed by the agents of both parties. Out of these discussions came an agreement to amend the contract by placing the balance of the work on a cost basis. As a result plaintiff was able to complete the work and continue in business although no provision was made to enable it to recoup the losses already sustained. However, the amended contract did provide that plaintiff should be paid $125,465.58 for the work already done; this was equivalent to payment for that work on the basis of the terms set out in the original contract.[1] We think the legal effect of this modification of the contract by the parties, who then proceeded with performance of the contract as modified, is that there can now be no recovery on account of any breaches that might have occurred before the modification.[2]

The effect of the modification on claims under the original contract is a matter of the intention of the parties; but in the absence of any provision in the amended contract for the losses already incurred and any reservation of plaintiff's rights and in view of the fact that plaintiff was paid in full under the terms of the original contract for work already done and relieved

1. Neither party has suggested that the amendment was without consideration; rather, each has insisted that the amendment was primarily for the benefit of the other. Plaintiff unquestionably received consideration; it was relieved of the obligations of an unfavorable contract. Presumably Section 201 of the First War Powers Act, 55 Stat. 838, 839, 50 U.S. C.A.Appendix, § 611, relieved the Government from the necessity of exacting consideration for its agreement to change the mode of payment. However, there is impressive authority to the effect that the amendment was not without consideration. Lange v. United States, for Use of Wilkinson, 4 Cir., 120 F.2d 886; Blakeslee v. Board of Water Commissioners of City of Hartford, 106 Conn. 642, 139 A. 106, 55 A.L.R. 1319; 138 A.L.R. 136; 55 A.L.R. 1333; McGovern v. City of New York, 234 N.Y. 377, 138 N.E. 26, 25 A.L.R. 1450. See also United States v. Cook, 257 U.S. 523, 42 S.Ct. 200, 66 L.Ed. 350. But cf. 1 Williston on Contracts (Revised Ed. 1936) §§ 130 and 130A.

2. Braden v. United States, 16 Ct.Cl. 389; McCabe Construction Co. v. Utah Construction Co., D.C., 199 F. 976; Cragin v. J. S. Eaton & Bro., 133 Miss. 151, 97 So. 532, 34 A.L.R. 508; Snowball v. Maney Brothers & Co., 39 Wyo. 84, 270 P. 167, 61 A.L.R. 199, rehearing denied 39 Wyo. 106, 271 P. 875, 61 A.L.R. 212; Juniper Lbr. Co. v. Nelson, 133 Va. 146, 112 S.E. 564, 24 A.L.R. 253. See also Winters v. United States, 84 F.Supp. 756, 114 Ct.Cl. 394.

of its obligation to complete the rest of the work at the same rate, we must conclude that on March 31, 1943, the slate was wiped clean.[3]

We do not suggest that every amendment to a contract would have this effect. But where a modification so fundamental is made in response to a situation so perplexing, the result, its seems to us, is that thereafter the obligation of each party is to be measured by the contract as amended and modified. Whatever causes of action plaintiff might have had on account of breaches of the original contract did not survive the execution of the amendment and modification.

■ We think, however, that plaintiff is entitled to recover costs incurred before March 31, 1943, which are properly allocable to production after that date. Clause 2(b) of the amendment to the contract provided: "Allowable Cost shall constitute the cost incurred on or after April 1, 1943, by the contractor in the performance of this contract and accepted by the Bureau of Supplies and Accounts as chargeable in accordance with 'Explanation of Principles for Determination of Costs under Government Contracts, War Department—Navy Department' printed by the United States Government Printing Office, April 1942, provided that paragraphs 9 and 44 thereof shall be modified to require the deduction of all cash discounts (without excepting 1% cash discounts); provided further, that in determining Allowable Cost there shall be included costs which have been incurred by the contractor in anticipation of this contract and prior to the signing thereof, and which, if incurred after the signing of this contract, would have been considered as items of Allowable Cost."

In the performance of all contracts similar to the one involved here there is always a high initial unit cost due to the preparation of equipment, the perfecting of methods of procedure, the education and indoctrination of personnel, and the general familiarization of management with the problems involved. As the personnel become familiar with the job and methods of performance are perfected with experimentation and practice, the unit costs gradually decrease until toward the latter part of the performance they become relatively constant. Such high intial costs are expected by fabricators and are customarily prorated over the entire performance so as to arrive at an average unit cost.

We understand the above-quoted clause of the contract, as well as the pamphlet included therein by reference, prescribes this procedure. Defendant followed this procedure in part when it recognized as applicable to performance under the supplemental contract a proportionate part of plaintiff's costs for leasehold improvements expended prior to April 1, 1943. We have considered the pamphlet referred to and also Treasury Decision 5000 as well as the Office of Contract Settlement's Regulation No. 5 ("Statement of costs principles") and Memo. No. 7 ("Initial Costs"), all of which documents are relevant and are in evidence before us. We have found as a fact that plaintiff incurred before March 31, 1943, normal high initial costs of $120,199.22 and that these costs are properly allocable to production of all the bow and stern sections for the 43 vessels. After March 31, 1943, 78.9535 percent of the poundage was completed. We find, therefore, that 78.9535 percent of $120,199.22, or $94,901.49, represents costs applicable to production after the amendment of the contract for which plaintiff has not been reimbursed. We hold, therefore, that plaintiff is entitled to recover this sum under the terms of the contract as amended. The consequent increase in allowable cost is not enough to affect plaintiff's bonus.

One factor in plaintiff's total losses is an item of $19,265.05 representing a retroactive wage increase paid pursuant to an or-

---

3. Bailey v. Gordon, 56 App.D.C. 30, 8 F.2d 672; Smith v. Washburn-Wilson Seed Co., 54 Idaho 659, 34 P.2d 969; Joseph v. Rottschafer, 248 Mich. 606, 227 N.W. 784; McCreery v. Day, 119 N.Y. 1, 23 N.E. 198, 6 L.R.A. 503; Juniper Lumber Co. v. John M. Nelson, Jr., Inc., 133 Va. 146, 112 S.E. 564, 24 A.L.R. 247. And see Snare & Triest Co. v. United States, 75 Ct.Cl. 326, 353, certiorari denied 289 U.S. 742, 53 S.Ct. 687, 77 L.Ed. 1489.

der of the Shipbuilding Commission of the National War Labor Board. In the allocation of losses set out in finding 34 and supra in the opinion, this item is reflected in that part of the loss found to be due to the inadequacy of the bid. Since we decide that the losses so allocated are not recoverable anyway, we have no occasion to consider the question of whether these retroactive wages would be recoverable under the principles set forth in our opinion in Irwin & Leighton v. United States, 115 Ct. Cl. 18.

 Defendant's contention that plaintiff is out of court because it failed to appeal the contracting officer's findings of fact is not relevant to plaintiff's right, under the contract as amended, to that part of normal high initial costs which is applicable to production after the amendment. The question whether plaintiff was so entitled was not for the contracting officer and he did not purport to decide it.

In addition to the $94,901.49, plaintiff is entitled to $1,000, which amount of the bonus due it has not yet been paid.

Judgment will be rendered for plaintiff for $95,901.49.

HOWELL, MADDEN, WHITAKER, and LITTLETON, Judges, concur.