**WESTERN TRANSMISSION CORPORATION, a Corporation, Appellant,**

v.

**COLORADO MAINLINE, INC., a Corporation, A. J. Curtis & Co., a Corporation, and Seaboard Surety Company, a Corporation, Appellees.**

No. 8718.

United States Court of Appeals
Tenth Circuit.

April 18, 1967.

A. G. McClintock, Cheyenne, Wyo. (Vinson, Elkins, Weems & Searls, B. Jeff Crane, Jr., and Raybourne Thompson, Jr., Houston, Tex., on the brief), for appellant.

William H. Brown, Casper, Wyo. (Morris R. Massey, of Brown, Drew, Apostolos, Barton & Massey, Casper, Wyo., on the brief), for appellees.

Before MURRAH, Chief Judge, and HILL and SETH, Circuit Judges.

HILL, Circuit Judge.

The appeal is from a judgment rendered upon a jury verdict in an action arising from a contract providing for the construction of a pipeline in the State of Wyoming. Appellant was the owner of the project and was defendant in the trial court. Appellees were joint venturers in the construction of the project and were plaintiffs below. Summarizing, appellant urges error in the following respects: (1) Failure of the trial court to sustain its motion for a directed verdict and subsequent motion for judgment notwithstanding the verdict; (2) refusal by the trial court to give two requested instructions; and (3) admission of certain oral testimony and three exhibits, all offered by appellees in the trial.

Appellant Western Transmission Corporation, hereafter referred to as Western, entered into a contract with appellee, A. J. Curtis & Co., hereafter called Curtis, providing for the construction of 25.5 miles of pipeline to be constructed of 12-inch steel pipe of a wall thickness of .203, grade X–46″ or X–52″ and in 52-foot lengths. Western agreed to furnish the pipe as specified. Gulf Interstate Engineering Company, which we will refer to as Gulf, was employed by Western to do the engineering work on the project and to act as its agent in the supervision and inspection of the work done by Curtis under the contract. Curtis later, with the approval of Western, subcontracted the work to appellee Colorado Mainline, Inc., hereafter called Mainline, with Curtis remaining responsible for the work and participating in the supervision.

The project was commenced after considerable delay, necessitated by Western being required to procure construction authority from the Federal Power Commission and to thereafter sell stock to raise the construction money. On October 12, 1964, the first rail cars of line pipe arrived at the job site and Curtis first learned that .219 wall seamless pipe had been substituted for the .203 wall electric resistance weld pipe called for in the contract. This pipe also did not meet the contract terms as to length and uniformity of thickness. These deficiencies undisputedly would lead to more work and unexpected problems in connection with welding the pipe joints. About this same time, Curtis and Mainline learned that a discharged former employee of Curtis, one Duncan, had been hired by Gulf as the welding inspector on the job. Before the welding was commenced, Landes, general superintendent for Curtis, and Carey, superintendent for Mainline, discussed the welding problems with Ford, who was Gulf's chief inspector. During this same period, A. J. Curtis, the company's president, went to the job site and talked with Coffin, Gulf's chief engineer, about the deficiencies in the pipe. On about October 20, Landes and Coffin agreed on an upward adjustment of five cents a foot in the contract price for handling and welding the pipe. Curtis and Mainline had requested that Duncan be taken off the job by Gulf because of the past unpleasant experience Curtis

had with him. There is evidence to support a finding that Gulf assured Curtis and Mainline that Duncan would perform his inspection duties without regard to his bad feeling toward Curtis. From the evidence, it may also well be concluded that these agreements did not settle all of the existing items of dispute between the parties and certainly did not purport to settle any differences subsequently to arise. Appellant's chief concern at this point appeared to be to get the pipe laid at all cost. Appellees contended at the trial that they proceeded with the construction contract, after the October supplemental agreement, only with the understanding that the remaining items of dispute between the parties would be settled after the work was completed and there is ample evidence in the record to support this contention and the apparent finding by the jury upon the issue.

In spite of continuing controversies between the parties appellees remained on the job until December 16. However, during this time work was stopped for short intervals on several occasions. By December 16, when appellees took their men off the job, the construction was about 80 per cent completed, all of the welding had been done by December 3 and the contractors had expended considerably more than the contract price. On December 21, appellees met in Houston, Texas, with representatives of appellant and Gulf in an effort to finally work out the then existing matters in controversy between the parties. This effort failed, appellees then left the job completely and appellant hired another contractor to finish the project.

Appellant's main thrust in this appeal centers around its asserted defense of waiver and estoppel. At the outset we do not reject the numerous legal authorities cited in appellant's brief in this area of the law. We simply say they are not applicable to the factual issues of this case because they do not pertain to the right of an innocent contracting party to proceed with performance upon condition after the breach.

It is elementary that an innocent party may waive a breach of a contract and continue performance on his part. If such performance is continued with no conditions attached, the innocent party has made an election and waived the breach.[1] But the innocent party may continue performance on condition that his right to subsequently assert the breach is preserved. In that event the right must not only be asserted but must be assented to by the other party.[2] Also, even after an innocent party has elected to proceed under the contract, despite the breach by the other party, he may thereafter change his position and assert the breach if the other party has not relied upon the election and changed his position because of such reliance.[3]

The trial judge, in his instructions to the jury, accurately and in plain, understandable language, applied these principles of law to the evidence adduced at the trial. He advised the jury in substance that it was a question of fact whether there was a substantial breach by Western and whether Curtis and Mainline thereafter continued to receive benefits and assert rights under the contract; that if they continued to go on with the contract unconditionally after knowledge of the breach, then such breach cannot be an excuse for their nonperformance; but if Curtis and Mainline thereafter continued performance in reliance upon an assurance from Western that their right to question the vari-

1. 17 Am.Jur.2nd, Contracts § 447.

2. Autrey v. Williams and Dunlap, 5 Cir., 343 F.2d 730; Williston on Contracts, 3rd Edition, § 688; see Rocky Mountain Tool & Machine Co. v. Tecon Corp., 10 Cir., 371 F.2d 589.

3. See Studer v. Rasmussen, Wyo., 344 P.2d 990; Snowball v. Maney Bros. & Co., 39 Wyo. 84, 270 P. 167, 271 P. 875, 61 A.L.R. 199; Hawkins v. Smith, 35 Idaho 349, 205 P. 188; Williston on Contracts, 3rd Edition, § 685; Lichter v. Mellon-Stuart Company, W.D.Pa., 193 F.Supp. 216, affirmed, 3rd Cir., Lichter v. Mellon-Stuart Company, 305 F.2d 216; cf. Bu-Vi Bar Petroleum Corp. v. Krow, 10 Cir., 40 F.2d 488.

ous acts of Western constituting the breach would be preserved until all facts with respect to the performance of the contract were definitely ascertained, then Curtis and Mainline did not waive their right to assert claims for additional compensation. The court also instructed the jury that to sustain Western's position of waiver, it must find that Western materially and to its prejudice changed its position in reliance upon promises of Curtis and Mainline to continue performance regardless of the breach.

■■ Appellant vigorously contends that on the basis of its defense of waiver and estoppel and under the evidence adduced, as a matter of law, Curtis and Mainline could not recover and its motion for a directed verdict should have been sustained. In considering such a motion the court must view the evidence in a light most favorable to the party against whom the motion is directed and if the evidence and the inferences drawn therefrom would cause reasonable and fair-minded persons to form different conclusions of the facts in issue the motion should not be granted.[4] Appellant's whole argument on this point assumes that the evidence and the inferences flowing therefrom were undisputed on the issue of waiver and estoppel. The authorities on this point cited in appellant's brief are applicable only when no factual issues exist. We have read and carefully considered all of the evidence and cannot agree with appellant's point. The trial judge correctly denied the motion and submitted the case because sharp factual issues existed and it would have been clear error to have taken the case away from the jury. Although this record is voluminous and the trial was lengthy, we do not view the case as a complicated one. It was simply a fact case to be submitted to a jury with adequate and appropriate instructions.

Appellees, without question, walked off the project and did not complete the contract. It is also true that they did this more than two months after they first learned of the pipe deficiencies and that Duncan was going to remain on the job as an inspector. During this time they had engaged in the performance of the contract. Western argues that these facts constituted a waiver of any breaches of the contract on its part, an election on the part of appellees to proceed under the contract regardless of the breaches, and an estoppel to now asserting those breaches and that appellees had no legal right to rescind the contract and leave the project. Appellees counter these contentions by arguing that they proceeded with the performance of the contract only because there was a mutual understanding between the parties that in spite of the pipe deficiencies and the difficulties over inspection procedure, construction would continue and the disputes between the parties would be resolved when all of the facts were ascertained.

The factual contentions of the parties and the evidence adduced clearly posed factual issues to be submitted to the jury under adequate instructions. There is substantial evidence in the record to show that although appellees proceeded with construction after knowing of pipe deficiencies they did so upon the urging of Western and Gulf to go ahead with the contract. Appellees did go ahead with the contract but at the same time continued to protest orally, by letters and by telegrams concerning the numerous difficulties encountered but not anticipated by the contract. There is ample evidence in the record to show that appellees, after the first breach by Western, proceeded with performance only after an understanding had been reached between the parties that their difficulties would be resolved later when all of the facts were known, either by agreement or by litigation if necessary. Under the applicable legal principles set out above

---

4. Peter Kiewit Sons Company v. Clayton, 10 Cir., 366 F.2d 551; Christopherson v. Humphrey, 10 Cir., 366 F.2d 323; Zelinger v. Uvalde Rock Asphalt Company, 10 Cir., 316 F.2d 47.

even if it could be concluded that appellees, by continuing performance, waived the contract breaches on the part of Western, they had a right to change this position if Western had not relied upon the waiver and materially and to its prejudice changed its position. The able trial judge clearly enunciated this principle of contract law in his instructions. From the evidence, Western may be said to have relied upon the waiver but it cannot be concluded that it materially and to its prejudice changed its position. We certainly will not speculate as to the reasoning followed by the jury but appellees' rescission of the contract could be legally supported by this legal principle as well as their legal right to continue performance upon condition, after breach.

■ Appellant next urges error because of the trial judge's refusal to give certain of its requested instructions. Counsel for appellant, in its brief, frankly admits that they made no specific objections to the instructions after the court had instructed the jury. In urging us to review the instructions, appellant relies upon the refusal of the trial judge to give two instructions requested by it. The record plainly shows that counsel for appellant did not comply with the clear mandate of Rule 51, F.R.Civ. P.[5] This court has spoken many times on this question.[6] The mere handing of a requested instruction to the court is not "stating distinctly the matter to which he objects and the grounds of his objection." Therefore, we must refuse to review this alleged trial error. However, our previous discussion of the case reflects that the jury was adequately instructed upon the issues in the case.

Finally, appellant urges reversible error in the admission of hearsay oral testimony and three exhibits. The trial transcript in this case is contained in 11 volumes, which demonstrates the great amount of testimony adduced. We are admonished by Rule 61, F.R.Civ.P., to disregard any error in the admission or exclusion of evidence unless we are able to conclude that such ruling by the trial court appears inconsistent with substantial justice.[7]

■ Much of the oral testimony complained of pertained to Gulf's inspector Duncan and was only a small amount of additional evidence on the issue of Duncan's unfair inspection practices. The trial record is replete with evidence on this issue. Even if we could conclude, which we do not, that all of the questioned oral evidence was inadmissible, it would not follow that its admission was inconsistent with substantial justice.

Exhibit # 44 was a weather summary showing daily high and low temperatures, wind velocity, precipitation and general weather conditions for the period from November 10 to December 19, 1963. It was prepared from the official records kept by the Federal Aviation Agency at Rawlins, Wyoming, which is approximately 30 miles from the project. The witness stated he made the summary from the above official records, vouched for its accuracy and said he did not think he could obtain the official records. The summary was admitted as secondary evidence and appellant does not attack its accuracy. The original records would be admissible under 28 U.S.C. § 1733. Technically, a proper foundation was not laid for admission of the

5. In pertinent part the rule provides " * * * No party may assign as error the giving or the failure to give an instruction unless he objects thereto before the jury retires to consider its verdict, stating distinctly the matter to which he objects and the grounds of his objection. * * *"

6. Pool v. Leone et al., 10 Cir., 374 F.2d 961, filed March 15, 1967; Dunn v. St. Louis-San Francisco Railway Company, 10 Cir., 370 F.2d 681; Peter Kiewit Sons Company v. Clayton, 10 Cir., 366 F.2d 551 and cases there cited.

7. United States v. Crescent Amusement Co., 323 U.S. 174, 65 S.Ct. 254, 89 L.Ed. 160; Friedman v. Sealy, Inc., 10 Cir., 274 F.2d 255; Vincent v. Young, 10 Cir., 324 F.2d 266; Bonner v. Polacari, 10 Cir., 350 F.2d 493.

summary as secondary evidence. No showing was made that a copy could not be obtained or that the original records were so numerous that their production would be practically impossible, expensive and burdensome.[8] As a practical matter, the contents of the records should have been stipulated to and their admissibility disposed of at the pretrial conference. However, we do not consider the evidence as prejudicial to appellants. It only corroborated oral evidence showing the extreme weather conditions existing during the construction of the pipeline.

Exhibit # 61 contains the weekly progress reports prepared by the office manager of Mainline and appellant urges error in their admission because some of the reports contain comments by the manager about inspection difficulties and other troubles with Duncan. The weekly reports, as such, were admissible under 28 U.S.C. § 1732 as business records. Some of the reports did contain gratuitous comments about inspector Duncan and it certainly would have been appropriate for the trial judge to admonish the jury to disregard such comments. But as we pointed out above in our discussion of the oral testimony about Duncan, there is much other evidence in the record about him from which the jury may well have found as it did, and the admission of the comments in exhibit # 61 to which appellant objects cannot be said to be inconsistent with substantial justice.

Exhibit # 65, offered at the trial by appellees and objected to as injecting a collateral issue into the case, purported to be a summary of average daily production on 25 other pipeline construction projects constructed by Curtis. A foundation for admission of this exhibit was laid by oral testimony of Curtis concerning these other projects. The daily progress on the project in question was certainly relevant and material in the lawsuit as it reflected the difficulties encountered by appellees in performing the contract. A comparison of this progress with normal construction progress on similar projects was also relevant and material. We find no error in the admission of this exhibit.

Affirmed.